H. E. REED, RESPONDENT, v. KANSAS CITY WHOLESALE GROCERY COMPANY AND CONTINENTAL CASUALTY COMPANY, APPELLANTS.— 156 S. W. (2d) 747.

Kansas City Court of Appeals. November 3, 1941.

*Henry M. Shughart, Harry P. Thompson, Jr.,* and *Walter A. Raymond* for appellants.

*Whitson Rogers* for respondent.

BOYER, C.—This case arose under the Workmen's Compensation Law. The appeal is by the employer and insurer from the judgment of the circuit court affirming the findings and the award made by the commission. There was never any issue in reference to the jurisdiction of the commission; nor that the plaintiff was injured in an accident arising out of and in the scope of his employment. On review before the commission it was admitted that the claimant was totally and permanently disabled.

The question contested during all the hearings and brought here is the proper method of computing the annual earnings of claimant during the year preceding the accident as a basis for the award to which he would be entitled under the law.

Claimant was a traveling salesman for the grocery company. Counsel agree that the contract of employment "provided in substance that Mr. Reed was to take over and travel a certain rural territory in the State of Kansas, and in doing that it was contemplated he would furnish an automobile and pay his own traveling expenses which would include whatever expense in addition to the automobile the traveling entailed, and that the employer was to allow him a commission at fifty per cent of his net profits, and that that was the only payment to be made by the employer; that the fifty per cent was to be used by Mr. Reed in the disbursement of expenses for whatever purpose; in other words, it was his money to pay as he saw fit, provided he did the job." There is but little evidence that would in any way change or modify this agreement. However, it is in some respects explained. It is made clear that claimant was to be paid 50 per cent of the net profits of the employer upon the total sales made by him as the consideration for his contract. He was to pay out of his commission whatever expense his work entailed, and the employer was not to be called upon to make any further payment on account thereof.

It was the custom of the company, after the end of each month, to render a statement to the salesman showing the amount of his total sales, the net profit thereon, the amount due the salesman, and send a check for that sum, less any amount for which the salesman might be indebted to the company. In addition to commissions thus transmitted to claimant, during the year preceding his accident, he received a further sum of $42.80 as a bonus on some special sale, which added to his commissions made the sum of $1722.91 as his total gross income for the year. During the year claimant traveled many thousands of miles and incurred a substantial amount of expense in the operation, maintenance and repair of his automobile,

and other expenses incident to his work, including the purchase of drafts, stamps, meals, and estimated depreciation on his car, all of which amounted, according to his evidence, to $606.65. His testimony further shows other items of expense not included in this sum, amounting to $67.15. They cover the cost of tires, tubes, state license tag, and repairs on the car.

Claimant had been employed for a number of years operating in territory contiguous to Abilene, Kansas, and covered his territory in his automobile. He never made any report of his expenses until early in 1937, at which time the company sent letters to all of its salesmen in reference to the desirability and necessity of separating traveling expense from compensation. The letter stated:

"On account of the Social Security Act, it becomes necessary for us to, hereafter, separate on our books, your weekly traveling expense from your compensation, so that you will be paying the 1 % tax on your compensation, after this traveling expense is taken off, as the law allows this deduction. Of course, you will receive your usual check, less the amount of the tax."

After this letter others followed with forms of expense sheets and with directions how to prepare them; and in one of the letters it was suggested that the automobile expense be figured on a basis of four cents per mile, covering depreciation, insurance, oil, gas, tires, wrecks, etc.

Pursuant to this request, claimant prepared and submitted a traveling expense sheet covering each week. Such sheets show the mileage traveled each day and the cost thereof at four cents per mile, the amount of money spent for meals, postage and exchange. The summary of such expenses as shown by said reports from the beginning of June, 1938, to and including the month of May, 1939, amounts to $1389.89.

The employer and insurer contend that such automobile and other business expenses incident to the work of claimant should be deducted from the gross earnings of claimant in arriving at his average weekly wage as a basis upon which to compute the compensation due him. The claimant contends that no such expenses are deductible under the contract of employment, and that if expenses of that nature are to be considered at all, the deduction should be made according to the actual expenditures rather than on the basis of the reports of expenses of four cents per mile for the car as directed by the employer.

The commission found that there should be no deduction whatever for expenses in arriving at the annual earnings of the claimant, and its attitude is shown from the following paragraph quoted from its findings:

"We further find that employee's net profits for the year just prior to his accident and injuries herein, including a bonus of $42.80, was $1722.91, and that this amount represents his net profits on

sales, including said bonus, without deducting any expenses; that. such expenses as were incurred and paid by employee were matters with which employer had no concern under the contract of employment so long as they were taken care of by employee, as they in fact were; that said sum of $1722.91 gives an average weekly wage of $33.13 plus, with the compensation rate $20.00 for the 300 week period and $8.28 thereafter for life.''

The award was made according to the above findings, less the amount already paid by the employer or insurer. The judgment of the Circuit Court approved the findings and award of the commission. There is but one point in the case, stated by the respective parties as follows:

Appellant says: ''The Missouri Workmen's Compensation Commission and the Circuit Court erred in holding claimant's automobile expenses and other special expenses entailed on him by the nature of his employment should be included in computing the annual earnings of claimant.''

Respondent says: ''The Missouri Workmen's Compensation Commission and the Circuit Court correctly held, in view of the contract of employment in evidence and under the Missouri statutes, that nothing should be deducted from the commission paid claimant, in computing his annual earnings.''

Both parties point to Section 3710, Revised Statutes of Missouri, 1939, paragraphs (a) and (g), as applicable provisions and upon which both parties rely, but their construction of such provisions is at complete variance. The portion of this section of the law is the following:

''The basis for computing the compensation provided for in this chapter shall be as follows:

''(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages, or earnings if in the employment of the same employer continuously during the year next preceding the injury.

''(g) In computing the annual earnings there shall be included in the reasonable value of board, rent, housing, lodging and fuel received from the employer as a part of the remuneration of the employee and which can be estimated in money, and the value of gratuities customarily received by consent of the employer, in the usual course of business from persons other than the employer, but there shall not be included the wages of helpers or any sums which the employer paid to the employee to cover any special expenses entailed on him by the nature of the employment.''

Appellants' counsel, with discriminating industry, present a list of cases and authorities upon which they rely for support of their position. It is not claimed that the exact point raised in this case was ever considered or adjudged in the determination of the cases

cited, and we find that none of them are exactly like this case in all material respects or precisely similar in the facts and circumstances affecting the decision. Metaphorically, they do not run on all fours. They are, however, indicative of the reasonable and logical construction to be placed upon the Workmen's Compensation Law to achieve its fundamental purpose, including the construction of the particular section of the statute brought in question and its applicability to facts and circumstances somewhat similar to the ones in this case, and prophetic of how the point in question should be ruled. The opinion in the case of Maltz v. Jackoway-Katz Cap Co., 336, Mo. 1000, 82 S. W. (2d) 909, 912, states:

"The original design, proclaimed by the title and emphasized by the provisions of the act, was to ameliorate, in the interest of the workman and the public welfare, the losses sustained by himself and his dependents from accidental injuries received by him in the proper course of his work, irrespective of causal or contributing fault on his part."

Section 3702 (b) provides that compensation shall be payable on the basis of 66 2/3 per cent of the average earnings of the employee, computed in accordance with the rules given in Section 3710. According to the design of the law as above described, it may be said that compensation allowed under the Missouri act is to make good to the employee two-thirds of the earnings of which he has been deprived by the injury, and the basis of the award is the resulting loss. It will be seen that under the above quoted statute in computing the annual earnings "there shall not be included any sums which the employer paid to the employee to cover any special expenses entailed on him by the nature of the employment."

In the case of Wahlig. v. Kremming-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128, the claimant was a salesman and collector. He used his own automobile in traveling over his territory and paid the operating expenses incident thereto out of his earnings. The compensation commission deducted the cost of the operating expense of the automobile and based the award on claimant's net earnings. The award was affirmed by the Circuit Court and by the Supreme Court, but the propriety of arriving at claimant's net earnings in the manner stated was not in issue for the reason, no doubt, that the award was for the maximum amount allowable in any event.

In the case of Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 60 S. W. (2d) 44, the claimant was a traveling salesman. He had a drawing account of $300 per month and was to receive his expenses while away from home. The sum of $597.58 was paid to claimant for said expense. After his death the employer paid his widow a bonus of $300. The employer contended that these sums should be included in the wages of deceased, and when so included his wages exceeded $3600 per year and the commission was without jurisdiction.

The commission declined to include the expenses but did include the bonus and held it was without jurisdiction. The Circuit Court on appeal reversed the action of the commission declining jurisdiction and held that the bonus was not to be included as wages. On appeal the Supreme Court affirmed the Circuit Court, and among other things stated that the sums which the employer paid to the employee for his expenses was a special expense entailed on him by the nature of his employment as defined by the statute.

In the case of Stapleton v. Gunn (Mo. App.), 69 S. W. (2d) 1104, the employer hired the employee's truck together with his personal services for the sum of $1.50 per hour. In affirming the award of the commission finding an average wage of $5 per day, the court stated:

"At $1.50 per hour, averaging eight hours to the day, the employee received $12 per day, and, allowing $2 per day for oil, gas, and repairs, and an additional $2 per day for the tires and upkeep of the truck, would leave a balance of $8 for the services of the employee. We can hardly see merit in the argument that a finding of fact on the part of the Commission that under this testimony the employee's average wage of $5 per day is unsupported by competent testimony."

In the case of Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S. W. (2d) 264, the injured employee was a traveling salesman using various methods of transportation, and often used his own automobile. He paid hotel bills, railroad or bus fares, and other expenses incident to the performance of his work. Such expenses were reimbursed to him by the employer who contended that these expenses should be included as wages and when so included the wages would exceed $3600, and that the commission was therefore without jurisdiction under the statute excluding employees whose annual earnings exceed $3600. This contention was overruled by the commission, by the Circuit Court, and by the Supreme Court. The court stated:

"Appellants argue that the expenses incurred by Newman when calling on customers away from Sedalia, which were reimbursed him by the employer, are to be considered as part of his earnings. Respondents say those expenses were special expenses entailed by the nature of deceased's employment and under paragraph (g) are not to be included. . . .

"In our opinion, on the facts of this case, the expenses above referred to are not to be included as part of Newman's earnings within the purview of our statute. Paragraph (a) of Section 3320 provides that compensation is to be computed on the basis of earnings which the injured person received as salary, wages, or earnings. Evidently the term 'earnings' following 'salary, wages' is used as meaning earnings of the same nature as those particularly specified, viz.,

salary or wages; that is, renumeration to the employee for his services." [l. c. 269.]

And in further exposition of the law the court stated, l. c. 270:

"The statute expressly provides that there shall not be included 'wages of helpers or any sums which the employer paid to the employee to cover any special expenses entailed on him by the nature of the employment.' Sums so paid to or for an employee do not go to the support of him or his dependents."

In the case of Heisey v. Tide Water Oil Company (Mo. App.), 92 S. W. (2d) 922, claimant was a distributer for the oil company. He furnished his own gasoline truck and equipment and was paid a commission on each gallon of gasoline sold. The commission found that the gross commission paid during the year preceding the accident of claimant amounted to $2879.41, and that Heisey's operating expenses were $103 per month or a total of $1236 per year, leaving a net annual earning of $1643.41, which was adopted as the basis upon which to compute compensation. The award was affirmed.

In the case of Toon v. Evans Coffee Co. (Mo. App.), 103 S. W. (2d) 533, claimant was a traveling salesman employed on the basis of 50 per cent commission of the net profits with a drawing account of $45 per week. The commission found that the employee's expenses amounted to $16.20 per week and deducted that sum from the amount he drew and took the difference as the average weekly wage. The contract of employment was construed to mean that the employee was entitled to receive $45 per week, out of which he was to pay his traveling expenses and in event 50 per cent of the profits exceeded $45 per week, he was entitled to the difference. The court approved the procedure adopted by the commission.

In the case of McClintock v. Skelly Oil Co., 232 Mo. App. 1204, 114 S. W. (2d) 181, the employee was a maintenance man and was much on the road in the course of his employment. In addition to his salary of $125 per month the employer reimbursed him for expenses while on the road, including hotel, meals, railroad fare, telephone calls, stamps, etc. Basing its ruling on the Russell and Newman cases, this court said, l. c. 185:

"In our opinion all of these expenses were special expenses entailed on him by the nature of his employment and should not be included in arriving at his average weekly wage."

The Newman case, *supra*, and the Illinois case mentioned in that opinion are the only authorities cited by respondent in support of his position. It is argued that while the court in the Newman case held that special expenses should be excluded in estimating earnings under the facts in that case, yet the inference to be drawn from what was said is that the court would hold such expenses should not be deducted where the employee was paid a commission out of which he paid his expenses.

Reliance is further placed upon the case of Springfield Coal Mining Co. v. State Industrial Commission, 291 Ill. 408, 126 N. E. 135. In that case plaintiff was paid $6.18 a ton for mining coal. The company furnished machines, tools, and materials required by the employee in his work, the price of which was deducted from wages each month. Under the Illinois statute and in view of the contract of employment, the court in that case held that the expenses incident to tools, materials, machinery, and the payment of union dues should not be deducted from the gross amount of plaintiff's wages. We do not find that the ruling in that case was adopted or approved by our Supreme Court in the Newman case; nor do we find that the Illinois case was ruled under a statute, contract, and facts comparable to the ones for consideration in this case.

In the case of McKeller v. Harkins, 184 Iowa, 1378, 166 N. W. 1059, the court took an opposite view to that adopted by the Illinois court on practically the same state of facts, and held that where the employer made a payment to the employee to cover special expenses of powder and blacksmithing which were entailed upon the employee by the nature of his employment the advancements so made for said purposes cannot be construed as earnings. The Iowa ruling is in accord with the rationale of the Missouri cases.

Respondent contends that the special expenses of claimant in this case were not in fact paid by the employer, but were paid by the employee out of money which he was entitled to use as he saw fit. In regard to this contention reference should be made to the express terms of the contract and the way in which claimant interpreted it as shown by his testimony, and the manner in which payment was made. The contract required claimant to furnish an automobile and to pay whatever expenses in addition to the automobile the traveling entailed, and "that the 50 per cent was to be used by Mr. Reed in the disbursement of expenses for whatever purpose." The testimony of claimant was that contained in his deposition which was procured in Abilene, Kansas. Among the questions and answers are the following: "Q. Did you understand at the time you commenced to work out here the commissions that were paid you on this merchandise was to cover the expenses of operating your car and calling on the trade in your territory? A. Just what was that?" The question was repeated and he answered: "I did." That the expenses incurred by claimant were in fact paid out of the commissions received from the employer there can be no doubt. As disclosed by the record of the evidence in this case claimant had no other means out of which to pay his expenses. We deem it immaterial whether the company issued only one check covering the gross amount of commissions, or two separate checks, one earmarked "special expenses" and another for the balance of the commission. The result was that the employer paid to the employee the sums of money required to cover these

special expenses entailed on the employee· by the nature of the employment.

Under the terms of ·the ·contract in this case the employer not only engaged the personal service of the employee, but may be said· to have hired the use of an automobile in the conduct of the work of the employee. The contract is similar to those in the Stapleton and Heisey cases above. The fair intendment is that the employee would use reasonable diligence and energy to work in the territory assigned and to further such efforts by the use of an automobile; the expense of which, as well as all other expenses incidental to the work, should be covered by the commission due him.

What then were the annual earnings of claimant? What was the renumeration to the employee for *his* services? What did he *gain* as the result of his work and what has he *lost* by reason of his injury? Expenses of the character described in this case cannot be included as earnings. We think the matter is resolved·that way by a single expression in the Newman case, *supra,* 73 S. W. (2d) 270, wherein the court said:

"Sums so paid to or for an employee do not go to the support of him or his dependents."

So in this case we hold that claimant's earnings amounted only to the economic gain derived from his employment—the annual sum which was available for his support. That sum is the only amount of which he has been deprived on account of his disability. It would be an anomaly to hold that he has been deprived of expenses required to be paid in prosecuting his work. His expense ended when his work ceased, and there was relief, rather than privation, of expense. Therefore, in computing the compensation to which claimant is entitled, the estimate should be based upon his net earnings instead of upon his gross commissions. Such has heretofore been the view of the law and the method adopted by the commission, as evidenced in the Wahlig, Stapleton, Heisey, Toon, and McClintock cases referred to above. No valid reason for a departure from the rule heretofore applied with judicial approval is apparent in this case.

Other authorities than the ones heretofore considered support the proposition that where an employer engages an individual to render personal service and in conjunction therewith to furnish trucks, horses, wagons or other things with which·to do the work, the expenses of such other things are regarded as special expenses entailed upon the employee by the nature of the employment and are not included in the earnings of the employee. [71 C. J., p. 809, sec. 529; Beuhner v. Bowman, 81 Ind. App. 395, 143 N. E. 366; Moore v. Fleischman Yeast Co. (Mich. Sup. Ct.), 256 N. W. 589.]

There is no room in this case for a liberal construction of the law to aid claimant in retaining the award made. The liberal construction that is required by Section 3764, is "with a·view to the public welfare." This does not mean that any strained construction of the law

should be made or allowed for the purpose of permitting an exorbitant award solely for private gain. This would clearly be opposed to the public welfare and the public policy of the State as exemplified in the compensation law. The liberal construction that is meant here is that the law shall be applied so that a claimant will be considered within its scope if reasonably possible, and, that while the law should be liberally construed to that end, it should also be justly administered with equal equity to both the employer and the employee.

The Missouri cases uniformly hold that special expenses paid by the employer should be excluded in determining whether earnings of the employee are such as to leave him in a compensable class. According to claimant's theory if the total annual commissions had exceeded $3600, his injury would not be compensable. We have no doubt that if such was the fact as to the amount of commissions the employee would be entitled to compensation, provided the amount of his special expenses was sufficient to reduce his total commissions to $3600 or less. If such special expenses are to be excluded for the benefit of claimant, there is no logical or just reason why they should be included to the detriment of the employer. The law should carry the same meaning whether the boot is on the one foot or the other.

We hold in this case that all special expenses entailed on claimant by the nature of his employment during the year preceding the accident should be deducted from the gross amount of commissions received by him during said period as the basis upon which to determine his annual earnings for the purpose of computing the compensation to which he is entitled. The commission did not do this, but based compensation upon the gross income of claimant and thereby stretched the blanket of compensation to cover losses that were never sustained by claimant. This was contrary to the spirit and letter of the Workmen's Compensation Law. The facts do not support the award, and the evidence is insufficient to warrant an award in the amount allowed, and the Circuit Court erred in affirming it. The employee should not be bound by his report of expenses on the basis suggested by the employer. The special expenses incurred by claimant during the period in question should be definitely ascertained and the amount thereof deducted from his total commissions. The result is that the judgment of the court should be reversed and the case remanded with direction to reverse the award and remand the case to the commission for further hearing and determination not inconsistent with this opinion. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment of the Circuit Court is reversed and the case remanded with direction to reverse and remand the case to the commission for further hearing and determination not inconsistent with this opinion. All concur.