**Paul J. WENGLER, Respondent,**

v.

**DRUGGISTS MUTUAL INSURANCE COMPANY, and Dicus Prescription Drugs, Inc., Appellants.**

**No. 60442.**

Supreme Court of Missouri, En Banc.

June 27, 1979.

Rehearing Denied July 17, 1979.

Ralph C. Kleinschmidt, Gerre S. Langton, Evans & Dixon, St. Louis, for appellants.

John W. Reid, III, Schnapp, Graham & Reid, Fredericktown, for respondent.

BARDGETT, Judge.

The issue on this appeal is whether the provision contained in section 287.240, RSMo Supp.1976, which affords a conclusive presumption of dependency to a widow for obtaining workmen's compensation benefits for the death of her spouse but requires a widower to prove actual dependency to receive reciprocal benefits, offends the equal protection clause of art. 1, sec. 2, Mo.Const., and amendment 14, U.S.Const.

Plaintiff-respondent Paul J. Wengler's wife Ruth was killed in an accident while working for defendant-appellant Dicus Prescription Drugs, Inc., and plaintiff made a claim for workmen's compensation death benefits under sec. 287.240(2). It is stipulated that plaintiff was not actually dependent for support, in whole or in part, upon the wages of his wife at the time of the injury, nor was he mentally or physically impaired from wage earning. In order for a widower to obtain periodic death benefits under 287.240(4) and (4)(a) upon the work-related death of his wife, the widower must either be (1) mentally or physically incapacitated from wage earning, or (2) must prove actual dependency for support, in whole or in part, upon his wife's wages. However, if the husband dies in a work-re-

lated accident, the surviving widow is conclusively presumed to be totally dependent upon her husband's wages for support. She does not need to prove actual dependency. Sec. 287.240(4) and (4)(a).[1] A child under age 18 is also conclusively presumed to be totally dependent upon his parent under 287.240(4)(b).

The workmen's compensation referee denied plaintiff benefits because no dependency on his wife's wages was shown. On review, the Labor and Industrial Relations Commission adopted the referee's award and denied compensation. The circuit court reversed and held that because sec. 287.240 affords a conclusive presumption of total dependency to a widow upon her husband's work-related death, it constitutes a denial of equal protection under art. 1, sec. 2, Mo.Const., and the fourteenth amendment, U.S.Const., to require a widower to prove dependency and to deny that same presumption to a husband whose wife dies in a work-related accident.

The employer and insurer appealed. This court has jurisdiction. Art. 5, sec. 3, Mo. Const. Our decision upholding the constitutionality of sec. 287.240(4) and (4)(a) renders other issues on the cross-appeal moot.

■ The workmen's compensation act is considered substitutional for common-law tort remedies. *Sheets v. Hill Bros. Distributors, Inc.*, 379 S.W.2d 514 (Mo.1964). Its primary purpose is to ameliorate, in the interest of working people and the public welfare, losses sustained from accidental injuries received by the working person in the course of employment, *Reed v. Kansas City*

*Wholesale Grocery Co.*, 236 Mo.App. 402, 156 S.W.2d 747 (1941), and is to be liberally construed with a view to the public welfare. Sec. 287.800, RSMo 1969.

The act was first adopted by the legislature in 1925 (Laws of Mo.1925, p. 375), and upon being referred to a vote of the people it was approved at the November 1926 election (Laws of Mo.1927, p. 490).

Section 21 of the original act provided for compensation upon the death of an employee. The definition of "dependent" in sec. 21(d) has continued to the present unchanged and is now sec. 287.240. The conclusive presumption of dependency of "a wife upon a husband legally liable for her support" was part of the original act, as was the provision which results in a nondisabled husband being required to show actual dependency, in whole or in part, to receive compensation upon the work-related death of his wife.

Workmen's compensation is not, in the main, financed by taxes and the payment of compensation is not a governmental obligation but rather the obligation of the employer.

The plaintiff contends that because of the differential in treatment of husbands and wives in claims under sec. 287.240 is gender based, it violates the equal protection clause of art. 1, sec. 2, Mo.Const., and the fourteenth amendment, U.S.Const.

■ To withstand scrutiny under the equal protection clause, classification by gender must serve important governmental objectives and must be substantially related to achievement of those objectives. *Califa-*

---

1. "(4) The word 'dependent' as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of the injury. The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee and any death benefit shall be payable to them to the exclusion of other total dependents:

(a) A wife upon a husband legally liable for her support, and a husband mentally or physically incapacitated from wage earning upon a wife; provided, that on the death or remarriage of a widow or widower, the death benefit shall cease unless there be other total dependents entitled to any death benefit under this chapter. In the event of remarriage, a lump sum payment equal in amount to the benefits due for a period of two years shall be paid to the widow or widower. Thereupon the periodic death benefits shall cease unless there are other total dependents entitled to any death benefit under this chapter in which event the periodic benefits to which said widow or widower would have been entitled had he or she not died or remarried, shall be divided among such other total dependents and paid to them during their period of entitlement under this chapter;".

no v. Webster, 430 U.S. 313, 316–317, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977).

In Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), the court upheld the constitutionality of a Florida statute which, since 1885, granted all widows an annual $500 tax exemption as against an equal protection attack brought by a widower. The court said there could "be no dispute that the financial difficulties confronting the lone woman in Florida or in any other State exceed those facing the man. Whether from overt discrimination or from the socialization process of a male-dominated culture, the job market is inhospitable to the woman seeking any but the lowest paid jobs." Earning statistics, cited in Kahn, of men as compared with women from 1955 to 1972 showed in 1972 that a woman working full time had a median income which was only 57.9% of the median for men—six points lower than in 1955. The court observed at 354, 94 S.Ct. at 1737, "While the widower can usually continue in the occupation which preceded his spouse's death, in many cases the widow will find herself suddenly forced into a job market with which she is unfamiliar, and in which, because of her former economic dependency, she will have fewer skills to offer." It was also noted at 355, footnote 7, 94 S.Ct. at 1737: "It is still the case that in the majority of families where both spouses are present, the woman is not employed. A. Ferriss, Indicators of Trends in the Status of American Women 95 (1971)."

Kahn v. Shevin, supra, distinguished Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), on the basis that the denial to service women of procedural and substantive benefits granted service men was "solely" for administrative convenience and served no important governmental objective; whereas, in Kahn, widows were found to be at an economic disadvantage to widowers. The court thereupon held the Florida statute rested upon a ground of difference that had a fair and substantial relation to be the object of the legislation.

Likewise, in Califano v. Webster, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977), the court upheld a gender-based difference which benefited women by requiring fewer number of elapsed years to qualify for certain old-age insurance benefits for women than for men. This, the court held, was a justifiable difference to correct a long history of discrimination against women by a male-dominated culture and an inhospitable job market.

However, in Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), the court held a gender-based distinction created by a provision of the social security act violated the due process clause of the Fifth Amendment. The provision in question allowed a widow to receive benefits based upon the earnings of her deceased husband without showing actual dependency, but required a widower to prove he was receiving at least one-half of his support from his deceased wife to qualify for benefits upon his working wife's death. The court, following Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), said 430 U.S. at 206–207, 97 S.Ct. at 1027:

". . . Wiesenfeld thus inescapably compels the conclusion reached by the District Court that the gender-based differentiation created by § 402(f)(1)(D)—that results in the efforts of female workers required to pay social security taxes producing less protection for their spouses than is produced by the efforts of men—is forbidden by the Constitution, at least when supported by no more substantial justification than 'archaic and overbroad' generalizations, Schlesinger v. Ballard, supra, 419 U.S. 498, at 508, 95 S.Ct. 572, at 577, 42 L.Ed.2d 610, or 'old notions,' Stanton v. Stanton, 421 U.S. 7, 14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975), such as 'assumptions as to dependency,' Weinberger v. Wiesenfeld, supra, 420 U.S. at 645, 95 S.Ct. at 1231, that are more consistent with 'the role-typing society has long imposed,' Stanton v. Stanton, supra, 421 U.S. at 15, 95 S.Ct. at 1378, than with contemporary reality."

The court also found the provision in violation of equal protection for essentially the same reason, saying 430 U.S. at 208, 97 S.Ct. at 1027:

> "From its inception, the social security system has been a program of social insurance. Covered employees and their employers pay taxes into a fund administered distinct from the general federal revenues to purchase protection against the economic consequences of old age, disability and death. But under § 402(f)(1)(D) female insureds received less protection for their spouses solely because of their sex. Mrs. Goldfarb worked and paid social security taxes for 25 years at the same rate as her male colleagues, but because of § 402(f)(1)(D) the insurance protection received by the males was broader than hers."

But in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the court upheld the denial of social security benefits to a woman applying for mother and daughter benefits on the basis of a provision in the act defining "widow" and "child" excluded surviving wives and step-children who had their respective relationship with the deceased wage earner for less than nine months prior to his death. Quoting from the earlier case of *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the court said 422 U.S. at 769, 95 S.Ct. at 2468–2469:

> " 'In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 . . . .' "

Other cases where the United States Supreme Court has invalidated statutes of various states on "invidious discrimination" grounds are: *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the Oklahoma law allowed females to buy beer at age 18 but denied males 18–20 the same right; *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Idaho statute which gave preference to males as administrators of decedents' estates; *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975), Utah law that made age of majority for females 18 but 21 for males.

In *Frontiero v. Richardson, supra*, a federal statute which allowed a serviceman to obtain an allowance for dependent housing if married, but did not allow a servicewoman to obtain dependency allowance for housing unless her husband was dependent upon her for more than one-half of his support, was held unconstitutional. It is noted that under the statute struck down in *Frontiero* the servicewoman was foreclosed from obtaining any benefits even though she may have supported the husband 49%; whereas, under the workmen's compensation provision in the instant case, a husband will receive benefits in accordance with the actual degree of support afforded him by his working spouse.

Three state courts have recently applied these principles to invalidate proof-of-dependency requirements imposed on widowers under their workmen's compensation statutes. *Arp v. Workers' Comp. Appeals Bd.*, 19 Cal.3d 395, 138 Cal.Rptr. 293, 563 P.2d 849 (Bank 1977); *Passante v. Walden Printing Co.*, 53 A.D.2d 8, 385 N.Y.S.2d 178 (1976); *Tomarchio v. Township of Greenwich*, 75 N.J. 62, 379 A.2d 848 (1977). In *Arp, supra*, the California Supreme Court found the conclusive presumption of dependency of widows to be violative of equal protection. The court held that the statute favors the male wage earner over the female wage-earner because of the disparity of protection accorded to their respective spouses. In *Passante* the court noted that death benefits are derived from the employ-

ment relationship itself, but a married woman has less security than a married man because of the conclusive presumption of dependency accorded to the widow but not the widower. Similarly, in *Tomarchio*, the New Jersey Supreme Court invalidated the dependency requirement of widowers as the court held the conclusive presumption accorded to widows denied women equal protection.

In summary, several jurisdictions have found statutory schemes similar to ours unconstitutional as perpetuating an outmoded standard which by its nature discriminates against those (women) whom it purports to protect.

The New York Supreme Court, Appellate Division, in *Passante* and the Supreme Court of California in *Arp* adopted a "strict scrutiny" standard of review for gender-based statutory schemes. As noted supra, in *Frontiero* the United States Supreme Court held a "dependency" provision invalid; however, only four justices adopted the "strict scrutiny" standard. Subsequent cases of the United States Supreme Court reinforces the concept that the "strict scrutiny" standard is inappropriate in these cases. See *Craig v. Boren, supra*. We decline to follow the approach utilized by New York and California, believing the "substantial relationship" test is more appropriate.

The social security cases of *Califano v. Goldfarb, supra*, and *Weinberger v. Wiesenfeld, supra*, are also distinguishable. Although the issues dealt with dependency benefits, the social security scheme is generally based upon mandatory contributions from past wage earnings of the employee. The legislative history of the social security act makes it clear that survivorship benefits are in the form of "social insurance". *Weinberger v. Wiesenfeld*, 420 U.S. at 644, 95 S.Ct. 1225.

■ The purpose of the workmen's compensation act was not to provide for blanket "social insurance". It is substitutional to the common law creating rights and remedies in favor of the injured employee or dependents for accidents in the course of employment. See *Todd v. Goostree*, 493 S.W.2d 411 (Mo.App.1973). The employer is the sole contributor to the fund, as opposed to the social security scheme of mandatory employee contributions (taxes) based on an income scale. See sec. 287.290, RSMo 1969. Therefore, the United States Supreme Court cases of *Weinberger v. Wiesenfeld, supra*, and *Califano v. Goldfarb, supra*, are not controlling in the case at bar.

Of some interest is the differing results reached in New York and New Jersey vis-a-vis California. In New York and New Jersey the court applied the "conclusive presumption" to widowers and thus *extended* benefits not provided for in the legislation. In California the court refused to extend benefits to widowers by using the "conclusive presumption" but rather denied that presumption to widows, thus withholding from widows the benefits of the legislation by requiring both widows and widowers to recover benefits only in proportion to proven dependency.

It appears from the opinions of the United States Supreme Court and the state courts in cases dealing with the same or similar matters, the courts have invalidated statutes by accusing Congress or state legislatures of "invidious discrimination" or of enacting statutes based upon "archaic and overbroad generalizations" which have "little relationship to present reality" or of casting female wage earners in a light which denigrates their economic contributions to their families' support. In most instances the opinions do not rely upon evidence or empirical data to arrive at these self-serving conclusions.

On the other hand, the opinions which uphold statutes which, on their face, evidence different treatment and "discrimination" in favor of women utilize statistical data and speak of the legislation as serving the purpose of correcting past abusive discriminatory attitudes toward women.

On its face, sec. 287.240(4)(a) appears to *favor* a woman (widow) rather than discriminate against her, in that it affords the widow death benefits on her husband's compensable death without further proof of

dependency. At the time the law was first adopted we can be reasonably certain equal protection contentions were not as prevalent as today, yet it seems apparent that the purpose of the presumption was to favor widows, not to disfavor them. The data available to the general assembly at that time no doubt supported the concept that a widow was more in need of prompt payment of death benefits upon her husband's death without drawn-out proceedings to determine the amount of dependency than was a widower. It seems reasonably certain that during the 1920's and 1930's it was more difficult than now for a woman to obtain employment with substantial pay and very difficult for her when, upon her husband's death, she was suddenly thrust into the job market. It seems rather obvious therefore that the purpose of the conclusive presumption of dependency was to satisfy a perceived need widows generally had, which need was not common to men whose wives might be killed while working.

None of the cases cited by the parties in briefs, or by the court in this opinion, holds that there was no important governmental objective to be served by the conclusive presumption provisions when they were enacted. The governmental objective was to require employers to alleviate the economic hardship resulting from a working spouse's death. This hardship was seen by the legislatures as more immediate and pronounced on women than on men. The statistics cited by the United States Supreme Court in *Kahn v. Shevin, supra,* appear to bear this out even today, and the claimant here has not shown any evidence or presented any empirical data to the contrary.

■ We do not believe the cases of *Arp, Passante* and *Tomarchio, supra,* articulate a sound basis for declaring the statute in this case violates the equal protection clause of either the Missouri or United States constitutions and therefore we decline to follow them. In so doing, we recognize the legislature must strike a delicate economic balance in deciding the amounts of compensation it will require employers to pay upon injury to or death of employees.

The widower is not deprived of death benefits upon the compensable death of his wife but is entitled to the same upon proof of dependency. In our opinion, the substantive difference in the economic standing of working men and women justifies the advantage that sec. 287.240(4)(a) administratively gives to a widow.

The judgment of the circuit court is reversed and the cause is remanded to the circuit court with directions to enter judgment affirming the decision of the Industrial Commission.

MORGAN, C. J., RENDLEN, J., and FINCH and HOUSER, Senior Judges, concur.

DONNELLY, J., concurs in result in separate opinion.

SEILER, J., dissents in separate dissenting opinion.

SIMEONE and WELLIVER, JJ., not participating because not members of the court when cause was submitted.

DONNELLY, Judge, concurring in result.

Judges of state courts are bound to follow the "supreme Law of the Land" (Art. VI, Constitution of the United States). The "supreme Law of the Land" is *only* what the Supreme Court of the United States says it is. *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *North Carolina v. Butler,* —— U.S. ——, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).

The issue on this appeal is, in part, whether § 287.240, RSMo Supp.1976, offends the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. The essential problem, as I see it, is that no identifiable "supreme Law of the Land" exists by which we may adjudicate a claim of alleged gender-based discrimination. Cf. *Muller v. Oregon,* 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908); *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Goesaert v. Cleary,* 335 U.S. 464, 69

S.Ct. 198, 93 L.Ed. 163 (1948); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Stanton v. Stanton*, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Califano v. Webster*, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977).

In this circumstance, I would turn to the issue whether § 287.240, RSMo Supp.1976, offends Art. I, § 2 of the Missouri Constitution.

In *Poe v. Ullman*, 367 U.S. 497, 542, 543, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), Mr. Justice Harlan, in dissent, speaking of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, expressed the view that "it has represented the balance which our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society." He then declared that "the liberty guaranteed by the Due Process Clause * * * is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints * * *, and which also recognizes, what a reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment. * * *."

In Missouri, "all political power is vested in and derived from the people" (Mo.Const. Art. I, § 1), and the power granted by the Constitution "is intended to promote the general welfare of the people" (Mo.Const. Art. I, § 2); but "all persons * * * are entitled to equal rights and opportunity under the law" (Mo.Const. Art. I, § 2). These provisions represent a balance which Missouri has struck between "the demands of

organized society" and the entitlement of individuals to "equal rights and opportunity under the law." In simplistic terms, it is the primary function of the legislative department to address "the demands of organized society," and the primary function of the judicial department to assure individuals "equal rights and opportunity under the law * * *." Mr. Justice Harlan's view would involve "particularly careful scrutiny of the state needs asserted to justify" a denial of "equal rights and opportunity under the law. * * *." Mr. Justice Harlan's approach is not permissible in Missouri. The judicial department may not exercise any power properly belonging to the legislative department. (Mo.Const. Art. II, § 1).

The determination of a question whether "the demands of organized society," as reflected by a particular statute, are sufficient to justify an abridgment of a right reserved to the people is an appropriate exercise of a governmental function by the legislative department and is entitled to considerable deference.

The determination of the *extent* to which a right reserved to the people may be abridged by a statute, if at all, is an exercise of the judicial function, and should be conclusive on the question of the constitutionality of that statute. The judicial department is the ultimate protector of the rights of individuals.

The problem of determining the extent to which a right reserved to the people may be abridged by a statute, if at all, is a difficult one. The "demands of organized society" are probably not *relevant* to the judicial inquiry. The protection of individual rights from abridgments by statute does not lend itself easily to the construction and application of a formula. Hopefully, the Bench and Bar will address the problem. Historically, in Missouri, gender-based discriminations are held to be matters for legislative determination that cannot be considered by the courts. *Brawner v. Brawner*, 327 S.W.2d 808, 815 (Mo. banc 1959). In my view, the law should be changed so that, *as a minimum*, if a statute, which purports to

satisfy the demands of organized society, invidiously discriminates between male and female persons, those demands and perceived needs should yield and the statute should be declared unconstitutional. *King v. Swenson*, 423 S.W.2d 699, 705 (Mo. banc 1968); Cf. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

It is worth noting that "exclusive appellate jurisdiction in all cases involving the validity of * * * a statute or provision of the Constitution of this State" is in this Court (Mo.Const. Art. V, § 3). Until a formula evolves, the people of Missouri have a right to expect that the judges of this Court would not "draw on our merely personal and private notions and disregard the limits that bind judges in their judicial function." *Rochin v. California*, 342 U.S. 165, 170, 72 S.Ct. 205, 208–209, 96 L.Ed. 183 (1952); see Benjamin N. Cardozo, *The Nature of the Judicial Process* (New Haven: Yale University Press, 1921).

In final analysis, "[e]ach new claim to Constitutional protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed." *Poe v. Ullman*, supra, 367 U.S. at 544, 81 S.Ct. at 1777 (Harlan, J., dissenting).

I concur only in the result.

SEILER, Judge, dissenting.

I respectfully dissent. I would hold the statute unconstitutional as violative of the equal protection clause of both the Missouri and federal constitutions and would require death benefits be awarded surviving husbands on the same basis as they are presently awarded widows. I think the matter is well put in *Passante v. Walden Printing Co.*, 53 A.D.2d 8, 11–12, 385 N.Y.S.2d 178, 180–81 (1976), as follows:

"[I]t is clear that the statute before us discriminates against the married woman *whose employment contributes to the economic well-being of her family*; whereas the working man, as a benefit of employment, is given the security of knowing that in the event of his work-related death; his widow, and therefore in most cases his family, will not suffer the loss of his entire income, the working woman is given no such guarantee . . .

". . . The disadvantage is most apparent in the present case, where Mr. and Mrs. Passante each earned approximately $200 per week. Had Mr. Passante died in a compensable circumstance, his family, through his widow, would have received, in addition to benefits payable on behalf of minor children, at least $156 per month . . . But because Mrs. Passante was the unfortunate victim, the family's resources will be less by the aforementioned amount, simply because the statute arbitrarily classifies the husband as breadwinner and consequently categorizes the wife's work as unimportant."

The point is made in *Arp v. Workers' Compensation Appeals Board*, 19 Cal.3d 395, 138 Cal.Rptr., 293, 563 P.2d 849, 855 (1977) in these words: ". . . On balance, the employed woman is short-changed. While her male colleagues are assured that in the event of a fatal industrial accident their widows—even fully self-supporting widows—will receive a financial cushion, the employed woman can provide her husband with no such security. He will receive benefits only [to] the extent that he can prove dependency, and if he is himself employed he may be eligible for no supplemental death benefit whatever."

The majority distinguishes *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Arp v. Workers' Compensation Appeals Board*, 19 Cal.3d 395, 138 Cal.Rptr. 293, 563 P.2d 849, and *Passante v. Walden Printing Co.*, 53 A.D.2d 8, 385 N.Y. S.2d 178, on the basis that they adopt a strict scrutiny standard. Instead, the majority applies a "substantial relationship" test. It then goes on to hold that since more women than men are dependent on their spouses for support, the legislature was justified in requiring widowers of working women to prove support, but not widows of working men.

There are several flaws in this argument. First, while in *Frontiero* only four members of the court concurred that sex is a suspect classification, four other members of the court concluded that the discrimination presented in that case could not pass even a more lax standard. *Frontiero*, 411 U.S. at 691–92, 93 S.Ct. 1764. Thus, in *Frontiero* eight members of the court concluded that the statutory scheme was in violation of the equal protection clause because of the discrimination against women it permitted. As the description of *Frontiero* contained in the majority opinion makes clear, the discrimination present in that case and this one are remarkably similar. There, as here, the wife was entitled to benefits automatically while the husband would be entitled only upon proof of dependency.

*Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) and *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), are distinguished on the basis that they dealt with the social security act and thus with a form of social insurance. However, in *Weinberger* the court stated:

"The gender-based distinction made by § 402(g) is indistinguishable from that invalidated in *Frontiero v. Richardson* . . . *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 60 (1975), explained: 'In . . . *Frontiero* the challenged [classification] based on sex [was] premised on overbroad generalizations that could not be tolerated under the Constitution . . . . [T]he assumption . . . was that female spouses of servicemen would normally be dependent upon their husbands, while male spouses of servicewomen would not.' *Id.*, at 507, 95 S.Ct. at 577. A virtually identical 'archaic and overbroad' generalization, *id.*, at 508, 95 S.Ct. at 577, 'not . . . tolerated under the Constitution' underlies the distinction drawn by § 402(g), namely, that male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support." 420 U.S. at 642–43, 95 S.Ct. at 1230–1231.

The majority states at the conclusion of its opinion:

"It seems rather obvious therefore that the purpose of the conclusive presumption of dependency was to satisfy a *perceived need widows generally had, which need was not common to men whose wives might be killed while working.*

. . .

. . . . .

"The widower is not deprived of death benefits upon the compensable death of his wife but is entitled to the same *upon proof of dependency.* In our opinion, the *substantive difference in the economic standing* of working men and women justifies the advantage that sec. 287.-240(4)(a) administratively gives to a widow." (emphasis added).

The quoted portions of *Weinberger* make clear that the Supreme Court has rejected just such reasoning as that advanced by the majority in support of the result reached. Regardless whether the standard to be applied is one of strict scrutiny or substantial relationship, administrative convenience and overbroad characterizations of the male as the primary breadwinner cannot serve to counterbalance or justify "a gender-based distinction which diminishes the protection afforded to women who do work." *Weinberger* at 648, 95 S.Ct. at 1233.