CITY OF ST. LOUIS, Appellant,

v.

Beverly GRIMES, Respondent.

No. 62584.

Supreme Court of Missouri,
En Banc.

March 9, 1982.

Rehearing Denied April 6, 1982.

Thomas A. Connelly, City Counselor, James R. Hartung, Robert H. Dierker, Jr., Asst. City Counselors., St. Louis, for appellant.

John J. Larsen, St. Louis, for respondent.

MORGAN, Judge.

In this Workers' Compensation case under Chapter 287, RSMo 1978, the City of St. Louis as appellant (employer) seeks review of the trial court's judgment which affirmed summarily a Final Award of the Labor and Industrial Relations Commission in favor of respondent (employee) and rejected any offset against the permanent partial disability award for wages paid by appellant while respondent was disabled and not working. We reverse.

The facts of the case are not in dispute. Respondent suffered an accidental injury in the course of her employment and was off work for 32½ weeks during which time appellant continued to pay her full wage of $254.95 per week. A claim for workers' compensation was filed and the Administrative Law Judge entered an award on March 14, 1979, granting to respondent 32½ weeks of temporary total disability and 40 weeks of permanent partial disability (10%) for a total award [1] of $6,253.57. It is agreed, and obvious, that the wages paid during the period of total disability in the amount of $8,194.82 exceeded the amount of the total award.

---

1. Temporary Total    $95/week x 32½ weeks = $3,053.57
Permanent Partial    $80/week x 40 weeks   =   3,200.00
            Total Award      $6,253.57

As noted, the Administrative Law Judge in his Findings of Fact and Rulings of Law (adopted by the judgment of the trial court) allowed credit against the award for temporary total disability but did not allow credit for the wages paid in excess thereof against the permanent partial disability award. The ruling was predicated upon that portion of § 287.100 (captioned: "Legislative Intent Relative to Other Laws Expressed") which reads:

\* \* \* \* \* \*

Nor shall anything in this chapter be construed as interfering with the right of any public employee to draw full wages ... *but the period during which the same are received after the injury shall be deducted from the period of compensation payments due hereunder.* (Emphasis added.)

He construed the latter provision as only permitting wages to offset awards for the same period as that for which wages were paid, *i.e.*, a "period-for-period credit". As a result, no credit was allowed against the permanent partial disability because such award is deemed to begin after the temporary total disability ends. He reasoned that: the latter period coincides with the recuperation period and it was during this period only that wages were paid even though respondent was not working.

Two points have been carried forward on appeal.

First, the appellant questions the constitutionality of applying § 287.100 or any other section in Chapter 287 (Workers' Compensation Law) to the City of St. Louis, a constitutional charter city. The challenge is based on Art. VI, § 22, of the Missouri Constitution, which provides, in part, that:

No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution. . . .

Resolution of the question turns on whether or not Chapter 287 creates or fixes powers, duties, or compensation of charter city municipal employees; and, we look to cases wherein similar issues were considered.

*State ex rel. Sprague v. City of St. Joseph*, 549 S.W.2d 873 (Mo.banc 1977), reflects this Court's most recent interpretation of § 22 of Article VI. Under §§ 341.-010–.080, RSMo 1969, the legislature provided a scheme for licensing and regulating plumbers in cities with 15,000 or more inhabitants. Sprague attempted to have his Gladstone (Missouri) license honored under the statute by the City of St. Joseph, a constitutional charter city. We held the statute not applicable because:

Under the *Preisler* decision [*Preisler v. Hayden*, 309 S.W.2d 645 (Mo.1958)] the only offices St. Joseph can have are municipal offices, it being a constitutional charter city. That being the case, the legislature cannot create or establish for St. Joseph a board of examiners of plumbers or say who its members shall be or their duties or compensation or who shall appoint them.

*Id.* at 877.

The decision in *Sprague* is particularly important because most all of the cases submitted by the parties were discussed therein; and, we necessarily repeat some points brought out in that case relative to § 22 of Article VI and matters of "statewide concern."

In *State ex rel. Burke v. Cervantes*, 423 S.W.2d 791 (Mo.1968), §§ 290.350–.360, RSMo (Cum.Supp.1963), involving the Firemen's Arbitration Board Act, were found not applicable to charter cities even though fire protection arguably was a matter of statewide concern.

In *City of Joplin v. Industrial Comm'n of Mo.*, 329 S.W.2d 687 (Mo.banc 1959), §§ 290.210–.310 (Supp.1957) ("Prevailing Wage Law") were held applicable to employees of city contractors because "... employment by private contractors is not municipal employment." The Court did comment, by way of dictum, however, that:

To construe the Act as applicable to direct employees of public bodies would

make it unconstitutional as to ... [constitutional charter cities] ... because Sec. 22 of Art. VI provides: 'No law shall be enacted creating or fixing * * * compensation of any municipal office or employment for any city framing or adopting its own charter * * *.' "

In *City of St. Louis v. Missouri Comm'n on Human Rights*, 517 S.W.2d 65 (Mo.1974), the Court upheld the application of Chapter 296, RSMo 1969, (Discriminatory Employment Practices) to charter cities. Respondent argues that the holding supports vesting the legislature with broad authority to regulate compliance by charter cities with programs of "statewide concern."

> The manner of enforcement of the state law is what really gives rise to the problem in this case. Respondents assert and the trial court agreed that the law would permit the Commission on Human Rights "to substitute its judgment for the Charter mandated decisions of the Civil Service Commission in such matters as determination of rates of pay, working conditions, competitive testing for hiring and promotion of black firemen * * *." The initial stage in the enforcement procedure, i.e., "conference, conciliation and persuasion" (§ 296.040, subd. 2.) to eliminate the unlawful employment practice, does not entail an overriding by the state agency of the municipal hiring authority. The trial court ignored this phase of the enforcement process and respondents here offer no showing of how such procedure would preclude the exercise of their own judgment by the municipal officials.

> \* \* \* \* \* \*

> The state has the right in the exercise of the police power to prescribe a policy of general state-wide application which applies to special charter cities. *Petition of City of St. Louis*, 364 Mo. 700, 266 S.W.2d 753, 755[4, 5] (1954). There must be some method of enforcement if the policy is to be effectuated. Here the basic enforcement is by way of order of an administrative body.

> \* \* \* \* \* \*

"Interference" in the performance of the duties of the city officers, for the purpose of securing compliance with state policy, is not "fixing the powers [or] duties" of a municipal office which is what the constitution prohibits. If an act of the legislature is to be declared unconstitutional, it must be demonstrated that the legislation is unquestionably violative of a constitutional prohibition or guaranty. Chapter 296, as applied to the City of St. Louis, has not been shown to violate the prohibition of Article VI, § 22, and the trial court was in error in so holding.

*Id.* at 70.

*State ex rel. McClellan v. Godfrey*, 519 S.W.2d 4 (Mo.banc 1975), involved a challenge under Art. VI, § 22, to a statute abolishing county coroners and establishing county medical examiners. We found no conflict, but the holding was based on the statute establishing a *county* office and not a *city* office. For instance, as said at page 9: "The activity of the mayor, called for by the Act, creates no constitutional violation because such activity does not involve the city of St. Louis in its capacity as a city...."

In *Cohen v. Poelker*, 520 S.W.2d 50 (Mo. banc 1975), this Court ruled that Chapter 610, RSMo (Cum.Supp.1973), commonly referred to as the "Sunshine law," was not violative of Art. VI, § 22. As said at page 54:

> Chapter 610 represents a legislative determination and declaration of the public policy of the state relating to meetings, records, and votes of *all* public governmental bodies; that policy being, in general, that such meetings, records and votes be open and available to the people these bodies serve. This policy, of general interest and import, is applicable statewide at all levels of government in the state.... Chapter 610 does not violate the provisions of Mo.Const.Art. VI, § 22.

Respondent cites *Patton v. Patton*, 573 S.W.2d 71 (Mo.App.1978), apparently to emphasize that workers' compensation benefits have a unique and rather singular status not limited alone to "compensation" as the

term is used in the constitutional section. Therein, the court did say at page 72 that:

... it is readily apparent the legislative enactments permitting specific and limited compensation recoveries to workmen and their dependents for medical services, death, burial expenses, scheduled injuries, hernias, miscellaneous disabilities, et cetera, cannot logically be equated to wages or the stipend paid for the rendition of services.

Appellant responds that the distinction made between "wages" and "compensation benefits" is not persuasive nor helpful to respondent as the constitutional proscription uses the term "compensation" and not "wages." Additionally, respondent submits that "compensation" as used in Chapter 287 differs from "compensation" as used in Art. VI, § 22, by contending that the former refers to "benefits paid for medical expenses, lost time from work and permanent disability..." while the latter is said to be more synonymous with "wages."

Absence of authority specifically supporting either position is not too surprising. Until 1974, governmental bodies were given the option of *electing* whether they were to be covered by the Workers' Compensation Law. In that year, § 287.030(2) ("employer" definition) was amended by removing the *option* for "state, county, municipal corporation, township, school or road, drainage, swamp and levee districts, or school boards, board of education, regents, curators, managers or control commission, board or any other political subdivision, corporation, or quasi-corporation, or cities under special charter, or under the commission form of government...." A recent holding of this Court in *Wengler v. Druggist Mut. Ins. Co.*, 583 S.W.2d 162 (Mo.banc 1979) (reversed on other grounds in 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 and republished on remand at 601 S.W.2d 8 (1980)) tends to show that "compensation" as used in the Workers' Compensation Act is not synonymous with "compensation" in § 22 of Article VI nor with "wages" as the term is generally used. Therein, at page 164, it was said that:

The workmens' compensation act is considered substitutional for common-law tort remedies. *Sheets v. Hill Bros. Distributors, Inc.*, 379 S.W.2d 514 (Mo.1964). Its primary purpose is to ameliorate, in the interest of working people and the public welfare, losses sustained from accidental injuries received by the working person in the course of employment, *Reed v. Kansas City Wholesale Grocery Co.*, 236 Mo.App. 402, 156 S.W.2d 747 (1941), and is to be liberally construed with a view to the public welfare. Sec. 287.800, RSMo 1969.

Respondent submits also that the workers' compensation statutes do not violate the constitutional proscription because they: (1) do not fix the powers of any municipal office; (2) do not impose any specific duty upon any municipal office; (3) nor fix the compensation of any municipal office. Further, it is emphasized that the term "compensation" in the Act refers to *benefits* paid for medical care, lost time from work and permanent disability and is not synonymous with "wages" received for services rendered.

In resolving the issue, it is not only necessary but appropriate that we balance the right of the state to promote the public welfare through programs of state-wide application and the right of charter cities to be free from outside interference in their internal affairs. We think the Act in question is compatible with both "rights," and is not violative of either. Certainly, nothing should be of greater concern to the state than the welfare of its citizens who have suffered some disabling injury. The limited protection given to them is accomplished with minimal disruption or interference with functions of the city; and, it is of some significance that the city is thus relieved of any potential common-law tort liability.

Believing that the compensation act does not contravene § 22 of Article VI, we rule the point against appellant.

■ Second, it is asserted by appellant that § 287.100, RSMo 1978, when properly construed, declares a legislative intent that

the Workers' Compensation Law not displace or interfere with public employee rights under pension or wage continuation plans adopted by local governments, and that nothing in § 287.100 bans appellant from the credit due under § 287.160(3), which provides:

> The employer shall be entitled to credit for wages paid the employee after the injury, and for any sum paid to or for the employee or his dependents on account of the injury, except for liability under section 287.140 [employer's obligation to provide medical services].

This section would appear to be consistent with the first portion of § 287.100, heretofore quoted, wherein the "employee's right" to a continuation of full wages is declared and the latter section which declares, conversely, the "employer's right" to credit for payment of the same. The sole confusion results from the two different interpretations placed upon the last "clause" in § 287.100 by the parties. Although heretofore quoted, we do repeat for convenience of reference that portion, to-wit:

> ... but the period during which the same are received after the injury shall be deducted from the period of compensation payments due hereunder.

As noted, the Administrative Law Judge construed § 287.100 as allowing only a period-for-period credit, thus overriding the credit provision of § 287.160(3). This Court has not addressed the issue as to how the two sections are interrelated; nor has the Court of Appeals in a *public* employment case. However, two opinions involving *private* employment disputes provide some insight.

*Point v. Westinghouse Elec. Corp.*, 382 S.W.2d 436 (Mo.App.1964), involved a private employee who had tripped and fractured her neck while on the job. The employer sought credits against the workers' compensation award because it had paid her, in essence, her full salary for five months following the injury. Of immediate interest is the following:

> The employee relies upon ... § 287.100, RSMo 1959, V.A.M.S. That section applies only to public employees and in any event it merely provides that nothing in the ... [Workers' Compensation Law] shall be construed to prevent the payment of full salaries. It does not provide that the employer shall be denied credit for the full salary paid during disability when the final award for permanent partial disability is made.

*Id.* at 440.

Similar issues were before the same court in *Strohmeyer v. Southwestern Bell Tel. Co.*, 396 S.W.2d 1 (Mo.App.1965). After noting that historically the vast majority of private employees did not receive their full salary when disabled, as did most public employees, the court said:

> The qualification contained in the second sentence of § 287.100 ... is *not a credit provision but one of disqualification.* It imposes a disqualification on the public employee which continues week by week to reduce the obligation to pay any compensation benefits so long as he retains his office and draws his full salary.... It should also be noted that § 287.160(3) ... has no provision for disqualification. Doubtless this is for the reason that private employees have no right to continue to hold their employment and draw their full salary during disability. *We cannot agree that § 287.100 ... in any way mitigates the plain and unequivocal wording of § 287.160(3) ..., providing that the employer is entitled to credit for any sum paid the claimant on account of the injury.* (Emphasis added.)

*Id.* at 7.

Ultimately, the Administrative Law Judge's holding turned on a Labor and Industrial Relations Commission decision in *Gross v. City of St. Joseph Police Dept.*, (Injury No. AS–84058–12–29–78). The following was quoted therefrom:

> The employee in this case ... was a public employee. Accordingly, ... [§ 287.100] is applicable to the disputed issues in regard to wages paid and credit for such wages. The last sentence in that

section clearly indicates that if a public employee has a right to claim his or her full wages and does, the period during which the same are received shall be deducted from the period of compensation payments due. . . .

Of specific interest is the fact that in *Gross* the dispute involved only a temporary disability award. The city (employer) had paid full wages for only a portion of the recuperation period; and, the commission ordered the employer to pay workers' compensation for the remaining portion of the recuperation period with no credit for wages paid in excess of the award for those weeks wages were paid. Based on that holding the employer in the instant case was denied credit against the permanent partial disability award because wages were paid in a different period, *i.e.*, during recuperation.

Appellant urges that § 287.100 is only a disqualification provision and not a credit provision. Thus, even though § 287.100 prevents a public employee from receiving full wages *and* workers' compensation payments, it does not prevent the public employer from receiving credit under § 287.160(3).

The second clause of § 287.100 contains the word "period" in two instances. However, it does not appear that they should be equated as having identical meanings in each use. The first *period* necessarily must refer to the recuperation period because it refers to the payments made to the employee while he is disabled; whereas, the second *period* undoubtedly refers to the total workers' compensation award (always expressed in terms of a specified number of weeks) because it is used in reference to the amount due "hereunder," *i.e.*, under Chapter 287. Clearly, such payments cover both the recuperation period and the period after recuperation. Therefore, all this clause actually states is that what an employee receives (wages) while disabled (the "first period" in the clause) is to be deducted from the total workers' compensation award (the "second period" in the clause). Appellant, thus, would be treated in the same manner

as a private employer; and, the result protects the right of the public employee to receive full wages while recuperating but does not allow overcompensation at the expense of others. Lastly, the statutes in question are *pari materia* and as so construed are compatible.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

DONNELLY, C.J., and SEILER, WELLIVER, HIGGINS and BARDGETT, JJ., concur.

RENDLEN, J., not participating.