**Henry T. HERSCHEL, Matthew W. Murphy and John A. Tackes, Respondents,**

v.

**Jeremiah W. NIXON, John R. Watson, Lawrence G. Rebman, Peter Lyskowski, The Division of Workers' Compensation of the Department of Labor and Industrial Relations of the State of Missouri, and the Office of Administration, State of Missouri, Appellants.**

**No. WD 71518.**

Missouri Court of Appeals,
Western District.

Nov. 23, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 2010.

Application for Transfer Denied
March 29, 2011.

Edward L. Dowd, Jr., James F. Bennett, and John D. Comerford, Clayton, MO, for Respondents.

Chris Koster, Attorney General, Ronald Holliger, General Counsel, Jeremiah J. Morgan, Deputy Solicitor General, Jefferson City, MO, for Appellants.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

This lawsuit was filed in the Circuit Court of Cole County ("trial court") by Henry T. Herschel, Matthew W. Murphy, and John A. Tackes, each of whom is an Administrative Law Judge ("ALJ") in the Division of Workers' Compensation of the Department of Labor and Industrial Relations ("the Division") (the three plaintiffs are collectively referred to as "the ALJs"). The ALJs sought an injunction preventing their impending removal from employment with the Division. They named as defendants the Division, the Office of Administration, and various State officials, including the Governor and the Acting Director of the Division (whom we collectively refer to as "the State").

Following a bench trial, the trial court entered a permanent injunction enjoining the State from terminating the ALJs. The State appeals. We reverse.

**Factual and Procedural Background**

The ALJs are the three most junior ALJs in the Division, measuring their seniority based on their ALJ service. On June 15, 2009, the four most junior ALJs received a letter from Peter Lyskowski, Acting Director of the Division ("the Director"), informing them that "in light of the reductions in the Division's fiscal year 2010 budget," effective June 30, 2009, the last day of the State's 2009 fiscal year,

"your service as an administrative law judge will end." [1]

On June 24, 2009, the ALJs filed this lawsuit to prevent their removal. The trial court issued a temporary restraining order barring their removal on June 29, 2009, and, after hearing evidence, a preliminary injunction to the same effect on July 9, 2009. A bench trial on the merits was conducted on August 26, 2009. On September 9, 2009, the trial court entered its Judgment and Permanent Injunction, which prohibited the State from terminating the employment of the ALJs, with certain exceptions not relevant to our disposition of the case.

The trial court's Judgment makes numerous findings of fact, which are not challenged on appeal. The trial court found that none of the ALJs "had any issues with their conduct, performance, or productivity while serving as ALJs in the Division" but that they had, instead, been selected for termination because they "were in the bottom four positions when the current roster of the Division's ALJs was sorted by time served as an ALJ within the Division." The trial court found

that "[t]here is no evidence that the General Assembly, Governor or any other of the individual defendants targeted any of the [ALJs] for political reasons nor that they acted in a malicious or corrupt manner."

In its conclusions of law, the trial court held that section 287.610 [2] "set up a statutory scheme which insulates and protects administrative law judges from budgetary pressures and other inappropriate influences." The trial court found that "[t]he Division lacks the authority to terminate an administrative law judge except as set forth in § 287.610 RSMo."

■ The State defends the ALJs' removal by relying on section 287.610 and the Fiscal Year 2010 appropriation for administration of the Division, which is contained in section 7.840 of House Bill No. 7, 95th General Assembly. *See* 2009 Mo. Laws 61, 76–77 ("the FY 2010 Budget Appropriations Bill"). The trial court rejected the State's arguments, evidenced by its judgment referenced *supra*.

■ The State timely appealed.[3]

1. Acting upon the fiscal year 2010 budget appropriations bill, which is the subject of this lawsuit, the Director actually sought to reduce a total of five ALJ positions within the Division. In addition to the ALJs filing this suit, one ALJ retired effective June 30, 2009 (and was not replaced), and one other ALJ, who received the Director's June 15, 2009 letter, chose not to participate in this lawsuit.

2. Unless otherwise indicated, statutory references are to RSMo 2000, as updated through the 2009 Cumulative Supplement.

3. At the outset, we address our own appellate jurisdiction. As the State notes, article V, § 3 of the Missouri Constitution states "[t]he supreme court shall have exclusive appellate jurisdiction in all cases involving ... the title to any state office." To constitute a "state office" in the relevant sense, the official duties and functions of the office must be "co-extensive with the boundaries of the state," *State v.*

*Olvera*, 969 S.W.2d 715, 716 (Mo. banc 1998), and the officeholder "must have been delegated a portion of the sovereign power of government to be exercised for the benefit of the public and such delegation of power must be substantial and independently exercised with some continuity and without control of a superior power other than the law." *Id.* (citation and internal quotation marks omitted). Although administrative law judges may be vested, as an initial matter, with many of the powers of the Division and the Labor and Industrial Relations Commission, *see* § 287.610.6, their decisions are subject to *de novo* review by the Labor and Industrial Relations Commission, consistent with the Commission's role as "the ultimate trier of fact" in workers' compensation proceedings. *Shaw v. Scott*, 49 S.W.3d 720, 728 (Mo.App. W.D. 2001) (citations and internal quotation marks omitted). Thus, it is the decisions of the Commission, *not* the decisions of administra-

## Analysis

### Standard of Review

"The court's judgment in a suit in equity will be affirmed unless there is no substantial evidence to support it, unless it was against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Conseco Fin. Servicing Corp. v. Mo. Dep't of Revenue*, 98 S.W.3d 540, 542 (Mo. banc 2003) (citing, *inter alia*, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). Because they are questions of law, issues of statutory interpretation are reviewed *de novo*. *Id.*

### Missouri's Workers' Compensation Law—Administrative Law Judges

■ Missouri's Workers' Compensation Law (Chapter 287, RSMo) was adopted by the legislature in 1925, approved by the voters of Missouri in 1926, and became effective in 1927. *See Wengler v. Druggists Mut. Ins. Co.*, 583 S.W.2d 162, 164 (Mo. banc 1979), *rev'd on other grounds*, 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 (1980); *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 618 (Mo. banc 1977). "The purpose [of Missouri's Workers' Compensation Law] is to provide a simple and nontechnical method of compensation for injuries sustained by employees through accident arising out of and in the course of employment and to place the burden of such losses on industry." *Bethel*, 551 S.W.2d at 618.

Chapter 287 provides that employers and employees or their dependents may make an application to the Division for a hearing regarding compensation for injuries alleged to have been sustained in the workplace. § 287.450. For approximately the first six decades, Missouri's Workers' Compensation Law referred to those employed by the Division to hear and determine employee workplace injury claims as "referees." Later, the title of this statutory employee position changed to administrative law judge. The position of administrative law judge is created by statute. § 287.610. While ALJs are not constitutionally created under article V of the Missouri Constitution (i.e. judicial branch of government), their role in the administration of justice in the State of Missouri is equally valuable to the citizenry of our state. Nonetheless, we also recognize that we are not permitted to make them something that they are not. Created by statute and not the Constitution, ALJs are state employees with certain due process rights, but they do not possess the same protections as article V members of the judiciary, and they are, indeed, subject to removal via methods that are excluded from article V of the Missouri Constitution—which brings us to the crux of this case.

This is a case involving construction of section 287.610. Two issues are presented: (1) does section 287.610 provide that ALJs may *only* be removed or discharged after two or more votes of no confidence by the ALJ Review Committee, as described in section 287.610.2 through .5; and (2) if the answer to the first question is "no," did the Director have the authority to remove five ALJs under the facts and

tive law judges, which are subject to judicial review. *Id.* We also note that, in an order entered on January 14, 2010, in Case No. SC90570, the Missouri Supreme Court denied the ALJs' motion to transfer this appeal to that Court—a motion that, in part, claimed that this case fell within the Supreme Court's exclusive jurisdiction because it involved "the title to any state office." Under these factual and procedural circumstances, we conclude that this case does not involve "the title to any state office" within the meaning of article V, § 3 and that we have jurisdiction over this appeal.

circumstances of this case pursuant to section 287.610.1? For the reasons herein described, we conclude that section 287.610 expressly recognizes two independent bases for discharging ALJs based *either* on the individual performance of a particular ALJ *or* based on the General Assembly's appropriation of funds to the Division. We also conclude that the Director was authorized in this case to remove the ALJs in response to the legislature's Fiscal Year 2010 appropriation to the Division.

### *When can an ALJ be Removed or Discharged*

Section 287.610.2 through .5 describes a process by which an individual ALJ can be removed following a performance audit process resulting in two votes of no confidence. There is no dispute that the ALJs in this case were not discharged pursuant to the procedures described in section 287.610.2 through .5. The ALJs claim that the "performance audit" process described in section 287.610.2 through .5 provides the sole and only basis for removal of an ALJ, once appointed. The State argues that section 287.610.1 affords the Division the alternative authority to discharge ALJs based on the requirements and needs of the Division as evidenced by appropriations from Missouri's General Assembly. We must determine, therefore, the legislature's intent by employing recognized principles of statutory construction.

We are required to give effect to all provisions of a statute, and to ascertain the intent of the legislature from the language used, considering the words in their plain and ordinary meaning. *Cmty. Fed. Sav. & Loan Ass'n v. Dir. of Revenue*, 752 S.W.2d 794, 798 (Mo. banc 1988). Section 287.610.1 provides, in pertinent part:

> After August 28, 2005, the division may appoint additional administrative law judges for a maximum of forty authorized administrative law judges. ***Appropriations shall be based upon necessity, measured by the requirements and needs of each division office.***

(Emphasis added.) The plain language of section 287.610.1 clearly envisions that the tenure of ALJs within the Division is subject to the legislature's appropriation of funds to the Division.

This conclusion is reinforced by review of the legislative evolution of section 287.610.1. Before 1998, section 287.610.1 provided, in pertinent part:

> The division may appoint such number of administrative law judges as it may find necessary, but not exceeding twenty in number.... Any administrative law judge ***may be discharged or removed only by the governor, based upon review by the department, pursuant to an evaluation by the administrative law judge review committee of the judge's conduct, performance and productivity.***

(Emphasis added.) The pre–1998 version of the statute thus expressly stated that the removal or discharge of an ALJ could *only* be based upon a review of the judge's conduct, performance, and productivity.

In 1998, section 287.610.1 was revised. It provided:

> The division may appoint such number of administrative law judges as it may find necessary, but not exceeding twenty-five in number beginning January 1, 1999, with one additional appointment authorized as of July 1, 2000, and one additional appointment authorized in each succeeding year thereafter until and including the year 2004, for a maximum of thirty authorized administrative law judges. ***Appropriations for any additional appointment shall be based upon necessity, measured by the requirements and needs of each division***

*office* .... *Any administrative law judge may be discharged or removed only by the governor pursuant to an evaluation and recommendation by the administrative law judge review committee,* hereinafter referred to as "the committee," *of the judge's conduct, performance and productivity.*

(Emphasis added.) The 1998 version of section 287.610 retained the language expressly providing that the *only* means of discharging an ALJ involved a review of the judge's conduct, performance, and productivity.

In 2005, section 287.610.1 was amended to the version of the statute in force today.[4] The legislature completely *removed* from section 287.610.1 *any* discussion of the discharge or removal of an ALJ based on a review of the judge's conduct, performance, or productivity. The concept of discharge or removal based on performance (a subject which necessarily involves the *individual* evaluation of a *particular* judge) was moved to section 287.610.2 through .5. Importantly, the 2005 amendment of section 287.610 *deleted* the language which had previously provided *that the only way to remove or discharge an ALJ* was based upon a review of the judge's conduct, performance, or productivity.

We afford significance to legislative modifications of a statute, particularly where a concept once clearly articulated, such as the directive that the only way to remove an ALJ is for cause, is eliminated from the statute. *State v. Bouse,* 150 S.W.3d 326, 334 (Mo.App. W.D.2004) (citing *State v. Sweeney,* 701 S.W.2d 420, 423 (Mo. banc 1985)). We are left with a version of section 287.610 which in no way states or suggests that the *only* way to

discharge an ALJ is for cause. Notwithstanding the ALJs arguments to the contrary, we are not permitted to write back into section 287.610 a prohibition on removal of ALJs except for cause when that concept has been purposefully eliminated by the legislature. *Id.* Thus, we necessarily hold that the trial court erroneously concluded that "[o]nce appointed and assuming they remain otherwise qualified to serve, an administrative law judge appointed pursuant to section 287.610 may be removed only by the Governor after for [sic] two or more votes of no confidence by the Committee or by a vote of non-retention taken at the end of their term." Instead, the plain language of section 287.610 provides a dual mechanism for removal of ALJs, with the first based on the individual performance of an ALJ (section 287.610.2 through .5) and the second based on the legislature's appropriations to the Division (section 287.610.1).

### Section 287.610.1 Authorization of the Division to Remove or Discharge the ALJs

Having determined that section 287.610.1 generally permits the removal or discharge of ALJs based upon the legislature's appropriation of funds to the Division, we must determine whether, under the facts and circumstances of this case, the Division acted in accordance with section 287.610.1 when it discharged the ALJs.

The first sentence of section 287.610.1 provides that, "[a]fter August 28, 2005, the division may appoint additional administrative law judges for a maximum of forty authorized administrative law judges." Though the first sentence of section

---

4. There have been other minor amendments to the statute since 2005, none of which are material to our discussion.

287.610.1 does not expressly address the Division's authority to remove ALJs, the ALJs concede that the first sentence inherently permits this discretion under certain circumstances. The ALJs acknowledge that the legislature could at any time modify the first sentence to reduce the maximum number of ALJs which can be appointed. Should the statutorily authorized maximum be lower than the number of appointed ALJs, the ALJs concede the Division would have the authority to remove the necessary number of ALJs to address the difference, thus acknowledging that section 287.610 does not prohibit the removal of ALJs except "for cause." As will be discussed, *infra*, the Division's conceded authority to respond to legislative action has equal application to the second sentence of section 287.610.1.

The second sentence of section 287.610.1 previously provided that "[a]ppropriations *for any additional appointment*[5] shall be based upon necessity, measured by the requirements and needs of each division office." In 2005, this sentence was amended to provide that "[a]ppropriations shall be based upon necessity, measured by the requirements and needs of each division office." The legislature's removal of the phrase "for any additional appointment" is legally significant. Prior to 2005, the im-

pact of appropriations on the total number of ALJs who could serve at any given time was limited to appropriations "for additional appointments." After the 2005 amendment, however, the second sentence of section 287.610.1 clearly and plainly provides the General Assembly with the authority to adjust appropriations for ALJs upwards or downwards based upon necessity, measured by the requirements and needs of the Division.[6]

The Missouri Constitution only permits the General Assembly to "make appropriations for one or two fiscal years." Mo. Const. art. IV, § 23. *See also State ex rel. Fath v. Henderson*, 160 Mo. 190, 60 S.W. 1093, 1097 (1901) ("[O]ne general assembly cannot tie the hands of its successor...."); *State ex rel. Kansas City Symphony v. State*, 311 S.W.3d 272, 278 (Mo.App. W.D. 2010).[7]

The removal of the phrase "for any additional appointment" from the discussion of appropriations, coupled with the legislature's removal of the language stating that ALJs can only be removed for cause, requires us to conclude that the legislature intended the second sentence of section 287.610.1 to afford another mechanism to reduce the number of ALJs actually serving. Just as the first sentence of section 287.610.1 necessarily incorporates the Divi-

5. It is not clear, nor particularly material here given the subsequent amendment of section 287.610.1 in 2005, whether "for any additional appointment" was meant to refer to additional ALJs over and above the thirty the Division was at that time authorized to appoint, or whether "for any additional appointment" was meant to impose the condition of available appropriations on the Division's ability to appoint an additional ALJ in each of the years 2000 through 2004.

6. We believe this legislative amendment is consistent with the unexpressed thought that government is not ever-expanding and can and must sometimes contract as a matter of necessity.

7. The trial court concluded that section 287.610 was intended, in part, to "insulate[ ] and protect[ ] administrative law judges from budgetary pressures." As well meaning as an interpretation of section 287.610 that prohibits its termination of ALJs for "budgetary pressures" would be, such an interpretation would fly in the face of the constitutional principle that prohibits one legislature from binding the appropriations authority of subsequent legislatures and, as we discuss in our ruling today, such interpretation must yield to this "appropriations principle" of our state's Constitution.

sion's inherent authority to discharge ALJs should the legislature modify the statute to reduce the maximum number of ALJs that can be appointed, so does the second sentence of section 287.610.1 incorporate the Division's inherent authority to discharge ALJs in response to a reduction in legislative appropriations.

Our recognition that the second sentence of section 287.610.1 permits the legislature to authorize a reduction in the number of serving ALJs through the exercise of its appropriations power is consistent with long-standing and fundamental principles of Missouri law. Although the legislature's participation typically ends once legislation is enacted, *Bowsher v. Synar*, 478 U.S. 714, 733–34, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), the Missouri Supreme Court has recognized that the legislature "may, of course, attempt to control the executive branch … *by the power of appropriation.*" *Mo. Coal. for Env't v. Joint Comm. on Admin. Rules*, 948 S.W.2d 125, 134 (Mo. banc 1997) (emphasis added). Of particular significance here, the Supreme Court has explained that, absent constitutional inhibition,[8] there is "no doubt of the power of the legislature to refuse to make an appropriation for the payment of the salary and expenses of any

public officer," *State ex rel. Tolerton v. Gordon*, 236 Mo. 142, 139 S.W. 403, 407 (1911), and there is "no doubt of the power of the legislature which creates an office to abolish it or to change it." *State ex rel. Voss v. Davis*, 418 S.W.2d 163, 168 (Mo. 1967).[9]

■ We conclude, therefore, that the first and second sentences of section 287.610.1 afford the Division the authority to remove or discharge ALJs under at least two circumstances: (1) where the legislature amends the statute to reduce the maximum number of ALJs permitted to serve below the number of ALJs then serving; and (2) where the legislature reduces appropriations for ALJs.[10]

■ Having established that the Division had the general authority to discharge ALJs in response to a reduction in appropriations, we must finally determine whether the FY 2010 Budget Appropriations Bill reduced appropriations for ALJs in the sense contemplated by section 287.610.1. The second sentence of section 287.610.1 does not address, and thus does not dictate, the specific manner in which the legislature must advise the Division that appropriations for ALJs have been modified.

---

8. Our analysis in today's ruling is limited to a discussion of the legislature's power of appropriations as it relates to statutorily created entities and employees thereof. The analysis of the constitutional power of appropriations in the context of constitutionally created entities is different as no article of the Missouri Constitution may ignore other articles of our Constitution and, instead, "[w]e should undertake to harmonize and give effect to *all* constitutional provisions." *Brown v. Morris*, 365 Mo. 946, 290 S.W.2d 160, 166 (1956) (emphasis added).

9. The trial court concluded that "[e]ven if [the FY 2010 Budget Appropriations Bill] expressly dealt with appropriations for administrative law judges, declining to fund five Admin-

istrative Law Judge positions is not the same as abolishing five Administrative Law Judge positions." We agree. However, the conclusion is immaterial. As *Tolerton* recognizes, the General Assembly may refuse to fund the salary for a position without actually abolishing the position itself, "[a]nd in either case the incumbent of the office has no legal ground of complaint." 139 S.W. at 407.

10. We do not intend to suggest that these represent the only scenarios wherein the Division has the authority to discharge ALJs within the permissible bounds of section 287.610.1. However, the discussion of other scenarios would exceed the necessary scope of this opinion.

Certainly, evidence that appropriations for ALJs have been reduced could include an express provision in an appropriations bill articulating an amount appropriated for a specific number of ALJs. Though such evidence would be compelling, its absence is not critical if other competent evidence permits the conclusion that the legislature intended to reduce appropriations for ALJs. We are persuaded such evidence exists in this case.

Here, there is no dispute that the executive branch's Fiscal Year 2010 budget recommendation listed a reduction of five ALJs as a "core adjustment" to the Division's budget.[11] There is no dispute that this request was based on the executive branch's assessment of the requirements and needs of the Division. There is no dispute the recommended reduction in ALJs in the Division was communicated to the legislature. There is no dispute that the legislature adopted appropriations for the Division which limited the number of F.T.E.s [12] to 150.25, a number which corresponds precisely with the reductions in ALJ positions, and other reductions in Division personnel, recommended by the executive branch. There is no dispute that the specific appropriation authorized by the legislature for administration of the Division was $9,141,363. There is no dispute that this represented a reduction in the appropriations for the preceding fiscal year in approximately the same amount as the collective annual salaries for five ALJs (combined with other reductions recommended by the executive branch). Moreover, the executive branch's recommendation of a 5.0 F.T.E. reduction in ALJs was retained in the supporting documentation (known as the Budget Reporting and Analysis Support System or "BRASS") on which the lump-sum appropriation for the Division contained in the Truly Agreed to and Finally Passed version of the FY 2010 Budget Appropriations Bill was based. Under these circumstances, the uncontested evidence necessitates the conclusion that the legislature reduced appropriations for ALJs in FY 2010 based upon input from the Division with respect to the requirements and needs of the Division.[13] The trial court erroneously concluded, therefore, that "[t]he Missouri General Assembly, by adopting [the FY 2010 Budget

11. The ALJs attached the Governor's FY 2010 budget requests to their petition and alleged that it was the budget submitted by the Governor to the General Assembly—removing five administrative law judges. The State admitted this allegation. *See Creech v. MBNA Am. Bank, N.A.*, 250 S.W.3d 715, 717 (Mo.App. S.D.2008) ("Allegations in a petition which are admitted in an answer do, in fact, constitute judicial admissions, for which production of evidence on the issue is not required and the fact is conceded for the purpose of the litigation that the certain proposition is true."); *see also Judy v. Ark. Log Homes, Inc.*, 923 S.W.2d 409, 418 (Mo.App. W.D.1996).

12. Though the FY 2010 Budget Appropriations Bill does not define "F.T.E.," it is generally accepted, and not contested in this case, that the commonly understood meaning of F.T.E. is "full time equivalent."

13. Our conclusion as to the purpose and effect of the FY 2010 Budget Appropriations Bill is confirmed by events surrounding the enactment of the Division's FY *2011* appropriation. The General Assembly's FY 2011 lump-sum appropriation for the Division's administration apparently restored funding for three additional ALJ positions. The Governor vetoed that line item, explaining that "[b]etween 2005 and 2009, the division realized a 25% reduction in first reports of injury and a 28% decrease in the number of claims filed. As a result, the fiscal year 2010 budget eliminated five administrative law judge positions. My budget recommendations for fiscal year 2011 did not provide for restoring any of the eliminated positions and, given the reduction in claims, a veto will not impact the department's ability to adjudicate workers' compensation cases." H.B.2007, § 7.840, 2010 Mo. Laws 54, 69 (reproducing Governor's veto message). The General Assembly took no further action in response to this veto.

Appropriations Bill], did not reduce the number of administrative law judges authorized to be appointed by the Division when it reduced the Division's total appropriation in the FY 2010 budget."

We need not, and do not, decide whether the legislative action on the FY 2010 appropriation for the Division *mandated* that the Director in fact eliminate the ALJs' positions, or whether the Director could instead have chosen in his discretion to retain the ALJs by eliminating other personnel expenditures to keep the Division within the lump-sum dollar amounts and F.T.E. count specified in the FY 2010 Budget Appropriations Bill. The course of legislative proceedings establishes beyond dispute that the General Assembly was made aware of the executive branch's recommendation to eliminate five ALJ positions and based its own FY 2010 appropriation for the Division (including its explicit directive as to the Division's maximum total F.T.E.s) on that recommendation. At a minimum, the legislature's action was sufficient to authorize, even if it did not require, the termination of the ALJs under the second sentence of section 287.610.1.

## Conclusion

We conclude that the Director had the authority to discharge the ALJs from the Division. The trial court erred in entering judgment in favor of the ALJs in all respects recorded by the trial court's judgment. Accordingly, the judgment of the trial court is reversed. Because no material facts are in dispute and the State is entitled to judgment as a matter of law, judgment shall be and is entered in favor of the State and against the ALJs.

VICTOR C. HOWARD, Judge, and ALOK AHUJA, Judge, concur.