

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| JAMES LUTES, | ) | No. ED100381 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable David L. Dowd |
| Honorable Lee B. Schaefer, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 20, 2014 |

This is an appeal from the entry of a writ of prohibition, by the City of St. Louis Circuit Court ("circuit court"), ordering the Division of Workers' Compensation Administrative Law Judge, Lee B. Schaefer ("Judge Schaefer"), to quash the Missouri Second Injury Fund's ("SIF") notice of deposition related to vocational rehabilitation expert Stephan Dolan ("Dolan"). We reverse and remand.

## I.  BACKGROUND

The facts of this case are simple and not in dispute. James Lutes ("Claimant") filed a claim for compensation, before the Division of Workers' Compensation, against the Treasurer of Missouri as Custodian of the Second Injury Fund for injuries alleged to have occurred in the course and scope of Claimant's employment. In an attempt to defend this underlying cause of action, the SIF hired (without the consent or authorization of Claimant) vocational rehabilitation expert, Dolan, to review the documents in the SIF's

legal file in order to determine whether Claimant was totally disabled and Claimant's employability. Dolan composed a vocational expert's report by undertaking a "records review"—Dolan never personally interviewed, physically evaluated, or physically examined Claimant. Subsequently, the SIF sent a copy of Dolan's report to Claimant with a notice to depose Dolan. After receiving the SIF's notice to depose Dolan, Claimant filed a motion to quash the deposition of Dolan. Administrative Law Judge ("ALJ"), Judge Schaefer, denied Claimant's motion to quash, and entered an order permitting the SIF to depose Dolan.

On March 28, 2013, Claimant filed a writ of prohibition or mandamus, pursuant to Rule 97, in the circuit court, requesting that Judge Schaefer be prohibited from denying Claimant's motion to quash the deposition of Dolan. On October 16, 2013, the circuit court granted Claimant's petition and ordered Judge Schaefer to quash the SIF's notice of deposition of Dolan.

This appeal now follows.

## II. DISCUSSION

The Second Injury Fund contends, in two separate points on appeal, that the circuit court erred in granting Claimant's Petition for Writ of Prohibition, thereby quashing the deposition of vocational expert Dolan. As indicated by each point, the determinative issue on appeal is whether an ALJ has the authority to grant the SIF's request to depose a vocational rehabilitation expert who merely conducted a "records review."

2

"Prohibition is an original remedial writ brought to confine a lower court to the proper exercise of its jurisdiction." State ex rel. White Family P'ship v. Roldan, 271 S.W.3d 569, 572 (Mo. banc 2008). A writ of prohibition does not issue as a matter of right, but is discretionary in nature and will issue "only to prevent 'an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power.'" State ex rel. Rosenberg v. Jarrett, 233 S.W.3d 757, 760 (Mo. App. W.D. 2007) (quoting in part State ex rel. Linthicum v. Calvin, 57 S.W.3d 855, 857 (Mo. banc 2001)). This discretionary authority shall be exercised only when the facts and circumstances of a particular case "demonstrate unequivocally that an extreme necessity for preventative action exists." State ex rel. AG Processing Inc. v. Thompson, 100 S.W.3d 915, 919 (Mo. App. W.D. 2003); see also State ex rel. Premier Mktg., Inc. v. Kramer, 2 S.W.3d 118, 120 (Mo. App. W.D. 1999) ("A writ of prohibition is an extraordinary remedy and it should be used with great caution, forbearance, and only in cases of extreme necessity.") (internal quotation marks and citations omitted).

*Analysis*

For almost ninety years, Missouri's Workers' Compensation Law, Sections 287.010, *et seq.*, has been the exclusive remedy for employees injured in the course of their employment. State ex rel. Kerns v. Cain, 8 S.W.3d 212, 214 (Mo. App. W.D. 1999) (citing Section 287.120.1); see also De May v. Liberty Foundry Co., 37 S.W.2d 640, 645 (Mo. 1931). From its inception, the primary purpose of the Workers' Compensation Law has been "to provide a simple and nontechnical method of compensation for injuries sustained by employees through accident arising out of and in the course of employment

3

and to place the burden of such losses on industry." Herschel v. Nixon, 332 S.W.3d 129, 133 (Mo. App. W.D. 2010) (quoting Bethel v. Sunlight Janitor Serv., 551 S.W.2d 616, 618 (Mo. banc 1977)); see also Wengler v. Druggists Mut. Ins. Co., 583 S.W.2d 162, 164 (Mo. banc 1979) (reversed on other grounds) ("Its primary purpose is to ameliorate, in the interest of working people and the public welfare, losses sustained from accidental injuries received by the working person in the course of employment[.]"); Stone v. Blackmer & Post Pipe Co., 27 S.W.2d 459, 460 (Mo. App. 1930) ("The purpose of all such acts was to place, as an expense of operation of a business, the loss of efficiency in the usefulness of its employees occasioned by accidents arising as an incident to the conduct of such business just as other costs of operation are chargeable[.]").  To effectuate this purpose, the Workers' Compensation Law conceives, constructs, and provides a method by which employers and employees (or their dependents) may make an application to the Division of Workers' Compensation for a determination regarding the compensation for injuries alleged to have been sustained in the workplace.  Herschel, 332 S.W.3d at 133 (citing Section 287.450).  Such a determination is performed by administrative law judges, a statutorily-created employee.  See Section 287.610; see also Herschel, 332 S.W.3d at 133 ("Created by statute and not the [Missouri] Constitution, ALJs are state employees with certain due process rights . . . .").

Being creatures of statute, ALJs and the Division of Workers' Compensation only have the authority granted by statute.  State ex rel. Lakeman v. Siedlik, 872 S.W.2d 503, 505 (Mo. App. W.D. 1994); see also Soars v. Soars-Lovelace, Inc., 142 S.W.2d 866, 871 (Mo. 1940) ("Like other administrative tribunals, it is a creature of the Legislature and does not have any jurisdiction or authority except that which the Legislature has

4

conferred upon it."). For example, and most pertinently, common law rights to discovery in workers' compensation cases have been, in some instances, abridged or expanded, but, nevertheless, prescribed by statute, including an ALJ's scope of authority to permit or prohibit certain forms of discovery. Kerns, 8 S.W.3d at 214. "An ALJ has only the authority granted by statute, and no additional common law rights to discovery exist in workers' compensation cases beyond those provided by statute." State ex rel. Arnett v. Greer, 921 S.W.2d 128, 129 (Mo. App. E.D. 1996). This is so, because the workers' compensation proceedings were devised to be "'simple, informal and summary[,]'" and if the SIF were permitted to exercise full common law discovery procedures "'in defending,' the workers' compensation case would be as complex, costly and time consuming as a litigated personal injury case." Lakeman, 872 S.W.2d at 506 (quoting in part Section 287.550).

At the crux of this appeal lies the question of an ALJ's authority to permit the SIF to depose a vocational expert who merely conducted a "records review." The litigants wrangle over whether a "records review" deposition is, in fact (or the equivalent of), an "examination" by a vocational rehabilitation expert. The litigants clash over the applicable section or sections of the Workers' Compensation Law, and the litigants spar over which case or cases are instructive. To complicate matters, the Missouri Legislature enacted numerous revisions to the Workers' Compensation Law in 2005, thereby calling into question many of the antecedent interpretations of the purported applicable statutes and the holdings of the cases cited by the litigants in support of their arguments. However, after wading through the litigants' arguments and authority, the dispositive

5

issue on appeal can be summarized as follows: does a "records review" by a non-physician expert equate to an "examination" of a claimant.

Before addressing this dispositive issue, we review the litigants' arguments, cases, and sections of the Workers' Compensation Law that have purportedly led to this quagmire.

### *Claimant's Arguments*

Prior to the comprehensive overhaul and amendments to the Workers' Compensation Law in 2005, Section 287.143 read as follows:

> As a guide to the interpretation and application of Section 287.144 to 287.149, sections 287.144 to 287.149 shall not be construed to require the employer to provide vocational rehabilitation to a severely injured employee.

Section 287.143, RSMo Cum. Supp. 1994. Pursuant to this section and the sections so referenced, the Missouri Court of Appeals, Western District, held that an ALJ lacked the authority to order a claimant to submit to an examination by a non-physician vocational expert. Lakeman, 872. S.W.2d 503, 506 (finding that, while the Workers' Compensation Law permitted certain parties the option to have a claimant undergo a medical examination by a physician, the Workers' Compensation Law prohibited any examination by a nonmedical person without the consent of the claimant); see, e.g., Kerns, 8 S.W.3d at 214-16 (an ALJ was prohibited from ordering a claimant to undergo an evaluation by a neuropsychologist, a non-physician).

Similarly, in relying, in part, upon Lakeman, this Court determined that an ALJ lacked the authority to order a claimant to submit to a deposition in which a non-physician vocational rehabilitation expert was present, as this would amount to the "practical result" of an examination of the claimant by a non-physician. Arnett at 129-30

6

("The expert would be allowed to observe the claimant's demeanor, physical abilities, limitations and responses during the deposition and use this information in her evaluations and findings. Because a vocational rehabilitation expert could not ascertain this type of information *from a reading of a deposition transcript alone*, we find that the practical result . . . amounts to an examination . . . .") (emphasis added).

After 2005, Section 287.143 was amended to, and currently reads, as follows:

> As a guide to the interpretation and application of Sections 287.144 to 287.149, section 287.144 to 287.149 shall not be construed to require the employer to provide vocational rehabilitation to a severely injured employee. *An employee shall submit to appropriate vocational testing and a vocational rehabilitation assessment scheduled by an employer or its insurer.*

Section 287.143, RSMo. Cum Supp. 2005 (emphasis added). Under the amended Section 287.143, the Western District, in State ex rel. Carter v. City of Independence, 272 S.W.3d 371 (Mo. App. W.D. 2008), effectively overruled, in part, Lakeman, Arnett, and Kerns (as conceded by Claimant), finding that an *employer or its insurer* now has the right to a *vocational evaluation*[1] of the claimant. Carter, 272 S.W.3d at 376-77.

Accordingly, Claimant contends that the plain language of the Workers' Compensation Law, specifically Section 287.143, only vests an ALJ with the authority to grant an *employer or its insurer* to conduct a vocational rehabilitation examination of a claimant. See Section 287.143. Here, Claimant argues the ALJ should have denied the SIF's requests to depose a rehabilitation expert (who only conducted a "records review")

---

[1] We note that the Workers' Compensation Law does not use the word "examination" when referencing vocational rehabilitation. See Section 287.143. Rather, the statute uses the terms "testing" and "assessment." Id. However, Carter, ostensibly, equated the language of Section 287.143 to mean vocational rehabilitation "examination." Carter, 272 S.W.3d at 378. We adopt this interpretation and use the term "examination."

7

as this would amount to a non-physician examination of Claimant by the SIF, not

Claimant's employer or its insurer.

### *The SIF's Arguments*

The SIF argues that, pursuant to Section 287.560, the ALJ is vested with the

authority to grant the deposition of *any* witness, including non-physician experts (i.e.,

vocational rehabilitation experts who conducted a "records review").  In pertinent part,

Section 287.560 reads as follows:

> The division, any administrative law judge thereof or the commission,
> *shall have the power*, to issue process, subpoena witnesses*,* administer
> oaths, examine books and papers, and require the production thereof, and
> to *cause the deposition of any witness to be taken* and the costs thereof
> paid as other costs under this chapter.

Section 287.560, RSMo Cum Supp. 2014 (emphasis added).  Accordingly, the SIF avers

an ALJ has the authority to permit the SIF to depose a vocational rehabilitation expert

who merely conducted a "records review."

In support of its argument, the SIF relies primarily upon State ex rel. McConaha

v. Allen, 979 S.W.2d 188 (Mo. banc 1998).  In McConaha, the Supreme Court of

Missouri held that Section 287.560 authorizes the use of a subpoena duces tecum under

Rules 56.01 and 57.09, because the statute requires that depositions in workers'

compensation matters are to be taken in the same manner as in civil actions.  Id. at 189-

90.

### *"Records Review" & "Examination"*

Both parties' arguments fail to hit the nail on the head as they evade the real issue

to be determined— is a "records review" an "examination?"[2]  Rather, the litigants dodge

---

[2] Claimant concludes that "[a] records review deposition is the same as an evaluation by a vocational
rehabilitation expert on behalf of the Second Injury Fund[.]"  The SIF concludes a "records review" and an

8

this step and presuppose a "records review" is that which fits their conclusion: (1) Claimant assumes a "records review" is an "examination," and therefore, an ALJ lacks authority to grant the SIF's deposition of a vocational expert, pursuant to Section 287.143; and (2) the SIF surmises a "records review" is not an "examination," and therefore, an ALJ has the authority to grant the SIF's deposition of a vocational expert, pursuant to Section 287.560. We find that a "records review" is not an "examination" for purposes of the Workers' Compensation Law.

First, the Workers' Compensation Law is noticeably silent on this issue. The parties cannot agree upon which statute or statutes either prohibit or permit a "records review" by a non-physician expert, and independent review finds no authority for the proposition that a non-physician expert can or cannot testify based upon a review of only the records in the legal file. In fact, this Court does not find that it is required to interpret any specific section of the Workers' Compensation Law; rather, we need only interpret the word "examination" within the context of the entire Workers' Compensation Law.

Second, while the term "examination" is utilized in various sections of the Workers' Compensation Law, it is never defined.[3] Generally, in such a scenario, we revert to the principles of statutory interpretation. In the absence of a statutory definition, "the words used in the statute will be given their plain and ordinary meaning. <u>Columbia Athletic Club v. Dir. of Revenue</u>, 961 S.W.2d 806, 809 (Mo. banc 1998) (overruled on other grounds). The dictionary is frequently used as a tool in determining the ordinary meaning of statutory language, yet, dictionary definitions are often not the final source of guidance as the plain and ordinary meaning of a word does not necessarily equate to its

---

"examination" are "fundamentally different." Neither party directs this Court's attention to *any* authority, but, rather, the litigants skirt this difficult, but important, issue.

[3] Additionally, the term "records review" is neither used nor defined by the Workers' Compensation Law.

dictionary definition. State v. Payne, 250 S.W.3d 815, 820 (Mo. App. W.D. 2008).

Here, the Dictionary offers little guidance due to the multitude of definitions for

"examination" which, we concede, can fit each party's conclusion.[4]

Thus, we must proceed with other principles of statutory interpretation to assist us

in determining the intent of the legislature. Parktown Imp., Inc. v. Audi of Am., Inc., 278

S.W.3d 670, 672 (Mo. banc 2009) ("This Court's primary rule of statutory interpretation

is to give effect to legislative intent as reflected in the plain language of the statute at

issue."). For insight into the intent of the legislature, we review those sections of the

Workers' Compensation Law that "examination" can be found, because we presume a

word has the same meaning in every place used within a statute. Cook v. Newman, 142

S.W.3d 880, 892 (Mo. App. W.D. 2004) (en banc). For instance, in reference to experts,

"examination" can be found in Sections 287.140, 287.210, and 287.220. A review of

those sections, clearly indicates that "examination" means a physical inspection of the

claimant, either visually, or by other means (e.g., interviewing the claimant, performing

tests, medical or otherwise, on the claimant, an expert's presence during claimant's

depositions or tests, etc.).

Accordingly, a "records review," in which an expert (physician or non-physician)

does not perform a physical inspection of the claimant, cannot be considered an

"examination" for purposes of the Workers' Compensation Law. A "records review" is

not the equivalent of an "examination." See, e.g., Arnett at 129-30 ("The expert would be

allowed to observe the claimant's demeanor, physical abilities, limitations and responses

---

[4] The dictionary definition of "examination" reads: "1: the act or process of examining: the state of being examined[;] 2: an exercise designed to examine progress or test qualification or knowledge[;] 3: a formal interrogation[.]" MERRIAM-WEBSTER ONLINE DICTIONARY. 2014. http://merriamwebster.com (9 May 2014).

during the deposition and use this information in her evaluations and findings. Because a vocational rehabilitation expert could not ascertain this type of information *from a reading of a deposition transcript alone*, we find that the practical result . . . amounts to an examination . . . .") (emphasis added).

Our interpretation of the term "examination" is in harmony with the obvious legislative intent. As both parties concede, vocational experts testifying after only performing a "records review" has been a common practice. See, e.g., Hartle v. Ozark Cable Contracting, 291 S.W.3d 814, 817 n.3 (Mo. App. S.D. 2009) (". . . Claimant provides no authority for the proposition that a vocational rehabilitation expert cannot rely on testing data procured by another such expert."); Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222 (Mo. banc 2003) ("Karen Kane, a vocational consultant with a master's degree in education, reviewed the record without personally interviewing the claimant."); Emp.: Keith Gentry Emp'r: Keith Gentry (Settled) Insurer: Mo. Emp'rs Mut. Ins. Co. (Settled) Additional Party: Treasurer of Mo. As Custodian of Second Injury Fund, 2014 WL 1284629, *8 (Mo. Lab. Ind. Rel. Com. Mar. 28, 2014) ("Mr. Hammond performed a vocational rehabilitation records review and testified that based on the treating doctors' restrictions, the claimant is employable in the open labor market based on the treating doctors' restrictions."); Emp.: Winifred Hobson Emp'r: Chrysler Corp. (Settled) Insurer: Self Insured (Settled) Additional Party: Second Injury Fund, 1998 WL 910244, *2 (Mo. Lab. Ind. Rel. Com. Dec. 8, 1998); Emp.: Janet Haynes Emp'r: Green Park Resident Ctr. Insurer: Nat'l Am. Ins., 1998 WL 809884, *2 (Mo. Lab. Ind. Rel. Com. Sept. 24, 1998). Contrary to Claimant's argument that the prior use and acceptance of "records reviews" is immaterial, irrelevant and should be disregarded, such use and

11

acceptance of "records reviews" is, indeed, pertinent in unraveling the legislative intent of the Workers' Compensation Law. "It is a cardinal rule of statutory interpretation that the legislature is presumed to know the existing law when enacting a new piece of legislation." State ex rel. Nothum v. Walsh, 380 S.W.3d 557, 567 (Mo. banc 2012) (citations omitted). The Missouri Legislature has had countless opportunities (most notably in 2005) to curtail or eliminate "records reviews"—a very familiar and established practice in workers' compensation cases—but has declined to do so. The legislative intent is clear: the Missouri Legislature approves of "records reviews."

Furthermore, an inverse holding (i.e., a "records review" is the equivalent of an "examination"), would produce absurd and unreasonable outcomes—something this Court seeks to avoid when construing statutes. State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n of State, 399 S.W.3d 467, 480-81 (Mo. App. W.D. 2013) ("However, this rule of statutory construction is tempered by the overriding rule that construction of a statute should avoid unreasonable or absurd results.") (internal quotation marks and citations omitted). The Second Injury Fund—a purely statutory creature, pursuant to Section 287.220—was established "to assist in the continuing fight against the unemployment of those who are sufferers of some disability at the time of their employment." Angus v. Second Injury Fund, 328 S.W.3d 294, 303 (Mo. App. W.D. 2010) (quoting James B. Slusher, The Second Injury Fund, 26 Mo. L. Rev. 328 (1961)); see also Wuebbeling v. West Cnty. Drywall, 898 S.W.2d 615, 617-18 (Mo. App. E.D. 1995) ("In effect, the Second Injury Fund removes the *incentive* to discriminate against disabled workers by offering assurance to employers that if the prior disability combines with a later, on-the-job injury so as to produce permanent and total disability, that would not have resulted in

12

the absence of the prior disability or condition, the employer's liability will be no greater than it would have been if the employee had been a perfectly healthy, non-disabled worker.") (emphasis in original) (internal citations omitted). If we were to permit claimants the ability to offer their own vocational expert testimony, yet deny the SIF the opportunity to also present vocational testimony, via a records review, the purpose of the SIF would be obliterated; the SIF would, indeed, be hamstrung in effectuating its purpose of fairly and expeditiously compensating *injured, disabled* workers. The balance of rights established between employees and the SIF under the Worker's Compensation Law would be significantly altered if employees were permitted to use vocational testimony to prove the existence of unemployability, while the SIF would be limited to cross-examining claimants' experts—this surely cannot have been the intent of the Missouri Legislature in creating the Second Injury Fund.

Therefore, finding that a "records review" by an expert is not an "examination" for purposes of the Workers' Compensation Law, we must next determine if an ALJ has the authority to grant the SIF's deposition of a vocational expert. Here, Section 287.560, supra, is controlling, and we hold that an ALJ may grant the SIF's requests to depose a vocational expert who merely conducted a "records review." See Section 287.560.[5] However, merely because the information is discoverable does not mean that such information is admissible. State ex rel. Creighton v. Jackson, 879 S.W.2d 639, 642 (Mo. App. W.D. 1994) ("The scope of matters subject to discovery was intended to be broad . .

---

[5] Rule 56.01 is "necessarily implicated" by Section 287.560. McConaha, 979 S.W.2d at 189. Pursuant to Rule 56.01(b)(1), litigants "may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . ." As such, the deposition of a vocational expert who conducted a "records review" is highly relevant in determining a claimant's employability; any perceived weakness relating to the expert's lack of physically examining a claimant can and should be challenged by the claimant on cross-examination.

13

. . Thus, not only may parties discover facts which are relevant to the litigation, but they may also discover that which is reasonably calculated to lead to the discovery of admissible evidence."); see also State ex rel. Plank v. Koehr, 831 S.W.2d 926, 927 (Mo. banc 1992) ("It is not grounds for objection that the information may be inadmissible at trial, but it is sufficient if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").[6]

Judge Schaefer did not exceed her jurisdiction in granting the SIF's requests to depose Dolan and denying Claimant's motion to quash. The circuit court improperly granted Claimant's writ of prohibition, and improperly ordered Judge Schaefer to quash the notice of deposition for Dolan.

### III.  CONCLUSION

For the foregoing reasons, the judgment of the circuit court is reversed, and the case is remanded for entry of an order quashing the writ of prohibition.

_____
Roy L. Richter, Presiding Judge

Clifford H. Ahrens, J., concurs
Glenn A. Norton, J., concurs

---

[6] At oral argument, Claimant argues that in workers' compensation cases, the intent of discovery is the search for *admissible* evidence. Thus, by way of logical reasoning, Claimant believes that information which **may** be inadmissible at trial should be protected from discovery. This is a direct contradiction of Rule 56.01, which is implicated by the Workers' Compensation Law. See, supra, n.5.

14